John MARTINO, Plaintiff,

v.

MASSACHUSETTS BAY
TRANSPORTATION AUTHORITY,
Defendant.

No. CIV.A. 01–10198–WGY.

United States District Court,
D. Massachusetts.

Oct. 22, 2002.

Mitchell J. Notis, Annenberg & Levine, LLC, Brookline, MA, for Plaintiff.

Walter B. Prince, Laurie F. Rubin, Prince, Lobel, Glovsky & Tye LLP, Daniel S. Tarlow, Prince, Lobel, Glovsky & Tye, Boston, MA, for Defendant.

*MEMORANDUM AND ORDER*

YOUNG, Chief Judge.

## I. INTRODUCTION

On June 25, 2002, the plaintiff John Martino ("Martino") won a jury verdict of $50,000 against his employer, the Massachusetts Bay Transportation Authority ("MBTA"). The jury found that the MBTA had, in violation of federal and state law, illegally retaliated against Martino in response to his filing a claim against the MBTA with the Massachusetts Commission Against Discrimination ("MCAD").[1]

Following his successful jury verdict, Martino has applied to this Court for an award of attorney's fees pursuant to the fee-shifting provisions of Title VII of the Civil Rights Act and Massachusetts General Laws Chapter 151B, the statutes under which he prevailed. The fee-shifting provision of Title VII, 42 U.S.C. § 2000e–5(k), provides that "In any action or proceeding under this subchapter the court, in its discretion, may allow the prevailing party ... a reasonable attorney's fee (including expert fees) as part of the costs." The analogous Chapter 151B fee-shifting provi-

---

**1.** The jury found in Martino's favor on both his federal and state claims. Having been instructed that these claims overlapped, such that if Martino prevailed on both, he would simply receive the larger of the two damage awards, the jury awarded Martino $50,000 under the state claim and no damages under the federal claim.

sion provides that a prevailing plaintiff shall be awarded "reasonable attorney's fees and costs unless special circumstances would render such an award unjust." M.G.L. ch. 151B, § 9. The same approach—the lodestar method—is used to calculate attorney's fees under both of these statutes. *See infra* p. 8.

Pursuant to these statutes, Martino seeks attorney's fees and costs in the amount of at least $121,765.70. He claims an hourly rate of at least $260.00 for the work of his primary attorney, Mitchell Notis ("Notis"), and alleges that Notis is entitled to compensation for 435.9 hours of work on his case, for a total of $113,334.00. Martino further suggests that Notis' proposed hourly rate of $260.00 should be enhanced to reflect the importance of this case and the risk that Notis assumed in accepting the case on a contingent fee basis. Martino seeks $1660.00 in legal fees and costs for Mary Sullivan ("Sullivan"), an attorney who spent 9.4 hours on Martino's case at a requested hourly rate of $175.00, and whose firm incurred $15.00 in messenger fees on his case. He also seeks $300.00 in legal fees for Andrew Kisseloff ("Kisseloff"), an attorney who spent 1.5 hours on Martino's case at a requested hourly rate of $200.00. Finally, Martino seeks costs in the amount of $6471.70.

The defendant MBTA argues that this figure should be significantly reduced. First, the MBTA argues that the appropriate rate for Notis (and Kisseloff) is no more than $185.00 per hour, claiming that Martino has failed to offer sufficient evidence that the prevailing rate is $260.00 per hour for attorneys such as Notis. Second, it argues that the number of hours should be significantly reduced to eliminate time spent on Martino's unsuccessful claims. Third, the MBTA argues that the eight hours which Martino's counsel failed

to record contemporaneously should be eliminated. Fourth, it argues that Martino's fee petition should be reduced because the MBTA made a settlement offer—$75,000—that exceeded the damage award—$50,000—that Martino ultimately received from the jury. Finally, the MBTA argues that Martino's attorney's fees should be reduced to reflect what they characterize as the "limited success" achieved.

## II. BACKGROUND

This action arose out of Captain John Martino's claim that his long-time employer, the MBTA, took adverse employment action against him in retaliation for a series of events that occurred between 1996 and 1998.

Martino originally joined the Police Department of the MBTA in 1979, and subsequently rose through the ranks to become Deputy Chief on the MBTA's command staff in 1990, and Major in 1995. Am. Compl., ¶ 7.[2] In 1996, Delores Ford–Murphy ("Ford–Murphy"), a captain with the MBTA Police Department, filed a gender discrimination complaint against the MBTA. *Id.* at ¶ 8. Martino, allegedly contrary to orders and threats by his superiors, gave deposition testimony in Ford–Murphy's case in September 1996. *Id.* at ¶¶ 9–12. During that same time, Martino became aware of what he believed to be improper purchasing practices under the jurisdiction of then-Chief John O'Donovan ("O'Donovan"). *Id.* at ¶ 13. He reported his observations regarding these practices to the MBTA, the Massachusetts Inspector General's Office, and the Massachusetts Attorney General's Office. *Id.*

Martino subsequently sought—and was denied—the position of Superintendent in the summer of 1997. *Id.* at ¶ 15. Believ-

---

**2.** The Amended Complaint referred to here was filed in *Martino v. MBTA*, Suffolk Superior Court, Commonwealth of Massachusetts, Civ. Action No. 00–4667–F, January 5, 2001.

ing that he was denied this promotion because of his deposition testimony in Ford–Murphy's case, as well as his whistleblowing activities described above, Martino filed a complaint against the MBTA with the MCAD on September 22, 1997. *Id.* at ¶ 15.

One month later, the MBTA embarked upon a major reorganization that resulted in the appointment of a new Chief, Thomas O'Loughlin ("O'Loughlin"), as well as the reassignment of Martino to his former civil service rank of Captain. *Id.* at ¶ 16. In response, in January 1998, with the assistance of his then-attorney Sullivan, Martino amended his MCAD complaint to include his October 1997 reassignment and demotion as another alleged act of retaliation, not only for the activities described above, but also for his filing of the MCAD complaint in September 1997. *See* Exhibit F to Defendant's Second Motion in Limine, Attachment A to Martino's MCAD Complaint [Docket No. 36].

O'Loughlin subsequently made further changes at the MBTA, and assigned now-Captain Martino to be the Commander of "Area B," which included the Orange and Blue Lines. Joint Pre–Trial Memorandum, Part I, ¶ 11. Meanwhile, Sullivan, determining that Martino's case would need to be litigated to a conclusion on a contingency fee basis, referred him to Notis. Sullivan Affidavit, ¶ 6.

In January 1999, O'Loughlin transferred Martino from his position as Commander of Area B to the command of the Detail Unit. Am. Compl., ¶ 18. Martino perceived this as a constructive demotion, given the significantly lesser amount of supervisory responsibility involved in the new position. *Id.* On January 27, 1999, he amended his MCAD complaint yet again to include this "constructive demotion" as another act of retaliation for both his 1996 activities and his filing of the MCAD charge. *See* Martino's Amended Charge

of Discrimination, ¶¶ 14–15 [Docket No. 36, Exhibit F].

In July 2000, the MCAD dismissed Martino's complaint for lack of probable cause. *See* Joint Pre–Trial Memorandum, Part I, ¶ 13. Martino, represented by Notis, responded by filing suit against the MBTA in the Massachusetts Superior Court sitting in and for the County of Suffolk. His amended complaint included four counts: 1) a retaliation charge pursuant to M.G.L. ch. 151B; 2) a retaliation charge pursuant to Title VII; 3) a deprivation of rights charge pursuant to 42 U.S.C. § 1983, and 4) a common law "whistleblower" charge that the MBTA had retaliated against Martino for reporting Chief O'Donovan's improper practices. Am. Compl. ¶¶ 24–31. On February 6, 2001, the MBTA removed the action to this Court. Shortly thereafter, the MBTA moved for judgment on the pleadings; on May 31, 2001, Martino's whistleblower claim was dismissed by the Court, and Martino voluntarily withdrew his section 1983 claim. Thus, only counts one and two—Martino's charges of retaliation pursuant to Chapter 151B and Title VII—proceeded to jury trial. By agreement, none of the evidence relating to Martino's whistleblower claim was presented to the jury. *See* Defendant's Second Motion in Limine, ¶ 5 [Docket No. 36]; Plaintiff's Opposition, ¶ 5 [Docket No. 38].

At trial, Martino identified three alleged incidents of retaliation: 1) the MBTA's denial of his application to become superintendent in July 1997; 2) his reassignment and demotion to the position of Captain in October 1997; and 3) his reassignment or demotion to the Detail Unit in January 1999. Notis served as Martino's primary counsel throughout the trial, and handled all of the work on Martino's case himself, with the exception of the 1.5 hours of assistance he received from Kisseloff in June 2002.

On June 25, 2002, the jury returned a verdict of $50,000 for Martino. The jury found that the MBTA had not retaliated against Martino because of his deposition testimony in the Ford–Murphy lawsuit, but that it had retaliated against Martino because he filed an MCAD complaint alleging such retaliation. This indicates the jury's conclusion that the denial of Martino's application to become superintendent (which occurred before Martino filed his initial MCAD complaint in September 1997) was not retaliatory, but that one or both of his subsequent reassignments (which occurred after Martino filed his MCAD complaint) were in fact motivated by retaliation.

## III. DISCUSSION

█ There is clear consensus that the lodestar approach, which computes attorney's fees by multiplying the number of hours reasonably spent on a case by a reasonable hourly rate, is the appropriate method of determining attorney's fees under the fee-shifting provisions applicable in this case. *See, e.g., Hensley v. Eckerhart,* 461 U.S. 424, 433 and n. 7, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) (endorsing the lodestar approach as providing "the most useful starting point" in setting attorney's fees in all cases where Congress has authorized a fee award to a "prevailing party"), *Blum v. Stenson,* 465 U.S. 886, 897, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984) (emphasizing that once a fee applicant has shown that the claimed rate and the number of hours are reasonable, the resulting product is *presumed* to be the reasonable fee); *Fontaine v. Ebtec Corp.,* 415 Mass. 309, 325–26, 613 N.E.2d 881 (1993) (stating that "[b]ecause State and Federal antidiscrimination laws prohibit similar conduct, attorney's fees available in both fora should, for the most part, be calculated in a similar manner.... [a] fair market rate for time reasonably spent preparing and litigating a case is the basic measure of a

reasonable attorney's fee under State law as well as Federal law.") (internal citations omitted). This Court's task, therefore, is to determine both the number of hours reasonably spent on this case by Martino's counsel, and the reasonable rate for those hours.

### A. Calculating the Lodestar

### 1. Reasonable Hours Expended

The Court begins by examining the number of hours listed in the contemporaneous billing records for the three attorneys who worked on Martino's case. Before moving to each individual attorney, however, the Court will set out the overarching principles governing its assessment of which hours are compensable in this case, as the parties hotly dispute this issue.

█ In calculating the number of hours for which an attorney is entitled to compensation, a court first examines the number of hours actually expended, and then "subtract[s] from that figure hours which were duplicative, unproductive, excessive, or otherwise unnecessary." *Grendel's Den, Inc. v. Larkin,* 749 F.2d 945, 950 (1st Cir.1984). If a plaintiff has prevailed on only some of his claims, the key issue is the relationship between the unsuccessful and successful claims. If the unsuccessful claims are unrelated and easily severable from the successful claims, then hours spent on them will be eliminated. By contrast, if they are substantially interconnected—because they share a common core of facts or are based on related legal theories—hours spent on them will typically be recoverable. *See, e.g., Hensley,* 461 U.S. at 435–436, 103 S.Ct. 1933; *Lipsett v. Blanco,* 975 F.2d 934, 941 (1st Cir.1992).

As noted above, Martino originally brought four claims before this Court: the Title VII retaliation claim, the Chapter

151B retaliation claim, the section 1983 claim, and the common law whistleblower action. He prevailed only on the first two claims; both the section 1983 claim and the whistleblower action dropped out of the case on May 31, 2002.

■ The section 1983 claim—the dismissal of which Martino did not contest—entirely overlapped Martino's Title VII claim. Thus, it is unnecessary and impracticable to separate out hours spent on the section 1983 claim, and the MBTA does not ask this Court to do so.

■ The whistleblower claim, however, is another matter. This claim, as noted above, centered specifically on Martino's reporting of former Chief O'Donovan's allegedly improper practices in 1996. The MBTA urges the Court to eliminate hours spent on the whistleblower claim, as "legally and factually distinct" from Martino's successful retaliation claims, Defendant's Opposition to Fee Petition at 4–5 [Docket No. 84], and the Court finds merit in this contention. Neither the whistleblower claim itself nor evidence of the facts underlying that claim was ever presented to the jury. *See supra* pp. 6–7. Moreover, Martino's own MCAD complaint—the filing of which ultimately prompted MBTA retaliation according to the jury verdict—made only a brief reference to the facts underlying his whistleblower claim. It focused almost exclusively on his involvement with the Ford–Murphy matter as the cause of the MBTA's adverse employment actions against him. In arguing that hours spent on the whistleblower action should not be eliminated, Martino offers only the conclusory statement that the retaliation claims and the whistleblower claim "were highly interrelated." Plaintiff's Motion for Attorney's Fees at 4 [Docket No. 81]. The Court rejects this contention, and, accordingly, will not award attorney's fees for hours spent on the whistleblower claim.

■ The Court now turns to the two retaliation claims on which Martino did prevail. The MBTA asks this Court to parse out the unsuccessful argument made in support of Martino's retaliation claims (that Martino was retaliated against for his testimony in the Ford–Murphy case) from the successful argument (that Martino was retaliated against for his filing of an MCAD complaint). Def.'s Opp. at 5–7. As the MBTA itself concedes, though, these two arguments were interrelated, in that Martino's MCAD complaint focused almost exclusively on his testimony in the Ford–Murphy matter and the alleged retaliation that he suffered as a result. For the jury to understand the nature of Martino's MCAD complaint and assess whether retaliation resulted from it, therefore, Martino's counsel had to present the facts relating to the underlying Ford–Murphy matter. Indeed, the MBTA acknowledges that Martino "may have been justified in developing some background information as to these matters," *id.* at 6–7, but argues that he expended too much time and effort on this front. The Court declines to engage in this type of assessment. The two theories of retaliation underlying Martino's successful retaliation claim are sufficiently interrelated that the Court will not attempt to disentangle the hours spent on each of them, nor will it engage in a speculative evaluation of how Martino's counsel should have apportioned his time. It accepts at face value the time claimed for work on Martino's ultimately successful retaliation claims under Title VII and Chapter 151B.

■ Before moving to each attorney's individual billing records, one final matter must be addressed. The MBTA points out that at a mediation before Magistrate Judge Neiman on January 30, 2002, it offered to settle the case for $75,000. *Id.* at 9. Martino rejected this offer, and was

ultimately awarded only $50,000 by the jury. The MBTA thus argues that Martino's counsel deserves no compensation for hours accrued after January 30, 2002.

Under Federal Rule of Civil Procedure 68, a settlement offer that is served upon an adverse party more than ten days before the trial begins and exceeds the ultimate judgment in the case prevents the offeree from recovering costs incurred after the making of the offer. In *Marek v. Chesny,* the Supreme Court held that Rule 68's ban on recovering post-offer costs applies to attorney's fees requested by prevailing parties in civil rights cases. 473 U.S. 1, 11–12, 105 S.Ct. 3012, 87 L.Ed.2d 1 (1985). The MBTA now asks this Court to extend that rationale to settlement offers made outside the context of a Rule 68 offer of judgment. In *Coutin v. Young & Rubicam Puerto Rico, Inc.,* the First Circuit explicitly left open the question of whether such an extension was appropriate. 124 F.3d 331, 341 n. 8 (1997). Other courts considering the issue, however, have consistently rejected such an extension. *See, e.g., Grosvenor v. Brienen,* 801 F.2d 944, 948–49 (7th Cir.1986), *Raishevich v. Foster,* 247 F.3d 337, 347 (2d Cir.2001), *Clark v. Sims,* 28 F.3d 420, 423–424 (4th Cir. 1994), *Fletcher v. O'Donnell,* 729 F.Supp. 422, 431 (E.D.Pa.1990). The Court agrees that it would be unfair to impose this stringent penalty on plaintiffs who reject oral settlement offers that lacked the formality, precision, and firmness of a written Rule 68 offer. Moreover, it notes that such a policy would likely have a chilling effect on the standard give-and-take that characterizes oral settlement negotiations. It thus rejects the MBTA's argument that Martino should not recover attorney's fees for hours accrued after January 30, 2002.

Having determined that only the hours spent on the whistleblower claim should be eliminated from Martino's request for attorney's fees, the Court now turns to each

attorney's contemporaneous billing records.

### a. Mitchell Notis

■ The billing record of Notis, Martino's primary counsel, indicates that he spent 435.9 hours on Martino's case. Pl.'s Mot., Ex. 1, Notis Affidavit and Billing Record at 6. Out of these hours, 427.9 were included in his contemporaneous billing records; 8 were not. *Id.* Notis explains that he did not keep contemporaneous billing records of phone calls, drafting, research, and other such tasks if they took less than one half-hour. Notis Affidavit, ¶ 18. In retrospect, he now estimates that these tasks, which he describes vaguely as "phone calls to client or opponent or court" and "drafting of documents," took approximately eight hours. Notis Billing Record at 6.

The First Circuit held in *Grendel's Den* that "the absence of detailed contemporaneous time records, except in extraordinary circumstances, will call for a substantial reduction in any award or, in egregious cases, disallowance." 749 F.2d at 952. With respect to these 8 hours, Notis not only failed to keep detailed contemporaneous records; he failed to keep any record whatsoever. Moreover, even in his current fee petition, he offers no information about when he allegedly performed these hours of work, nor any explanation (aside from the vaguest of generalities) of what this work entailed. Accordingly, the Court declines to award Notis compensation for these 8 hours.

■ Moving on to the remaining 427.9 hours, 65.9 of these hours accrued before Martino's whistleblower action was dismissed on May 31, 2001, and 362 hours were spent after that point. The 362 hours were clearly devoted to Martino's ultimately successful retaliation claims, and are thus recoverable. The 65.9 hours,

however, present a more difficult question, as they include work performed on Martino's unsuccessful and largely unrelated whistleblower claim. For the most part, unfortunately, Notis's records fail to distinguish work on the retaliation claims from work on the whistleblower claim. As the MBTA concedes, 11.7 of these hours were clearly devoted exclusively to the retaliation claims, and are thus recoverable. Def.'s Opp. at 5. Notis's records also identify 1.1 hours that were devoted solely to the whistleblower claim; these hours are not recoverable. Notis's Billing Record at 1. The entries for the remaining 53.1 hours, however, include only general statements such as "research retaliation and whistleblower cases" or "meeting with client to discuss facts and strategy." *Id.* As such, the relative proportions spent on the retaliation and whistleblower claims are entirely unclear.

 Given that the retaliation claims were subject to fee-shifting statutes, while the whistleblower claim was not, and given the factual and legal distinctions between these two claims, Notis could and should have kept distinct the hours spent on each claim. Because the Court cannot discern which of the 53.1 hours were devoted to Martino's retaliation claims and which were devoted to his whistleblower claim, the Court will divide them in half, and assume that 26.55 hours were spent on the retaliation claim and are thus recoverable. It will further reduce those 26.55 hours by fifty percent, to 13.275 hours, as a sanction for Notis's failure to keep sufficiently detailed time records. This approach is consistent with the First Circuit's common practice of reducing by fifty percent fee petitions that lack sufficient detail. *See, e.g., Lipsett,* 975 F.2d at 938, 944; *Davignon v. Clemmey,* 176 F.Supp.2d 77, 96 (D.Mass.2001).

Thus, Notis is entitled to compensation for the 362 hours that he spent on Martino's case after May 31, 2001, and for 13.275 of the hours that he spent on Martino's case prior to that point—a total of 375.275 hours.

#### b. Mary Sullivan

The contemporaneous, detailed billing records of Sullivan, who served as Martino's counsel from November 1997 to November 1998, indicate that she spent 9.4 hours on his case. Pl.'s Mot. Ex. 4, Sullivan Affidavit at ¶ 4 and Billing Record. She joined Martino's case two months after Martino had filed his initial complaint with the MCAD. She subsequently drafted his first amended MCAD complaint (in which he alleged that he had been retaliated against for filing the initial complaint, an allegation on which he ultimately prevailed), and also engaged in negotiations with the MBTA's counsel regarding Martino's complaint. Sullivan Affidavit, ¶ 4.

The MBTA argues that Sullivan's time should be reduced by half to account for her work on Martino's unsuccessful argument that he was retaliated against for his involvement in the Ford–Murphy lawsuit. Def.'s Opp. at 11. As the Court has already discussed, however, it will not parse out the time spent in developing the two arguments for Martino's ultimately successful Title VII and Chapter 151B retaliation claims. It will only eliminate hours spent on Martino's dismissed whistleblower claim, to which Sullivan devoted little if any time. The MCAD complaint on which Sullivan worked focused on the facts underlying Martino's retaliation claim, and her representation of Martino ceased before Martino brought his whistleblower action. Accordingly, the Court will compensate Sullivan for the full 9.4 hours that she devoted to Martino's case.

#### c. Andrew Kisseloff

Kisseloff's contemporaneous, detailed billing records indicate that he devoted 1.5

hours to Martino's case, essentially assisting Notis with some brief matters during two days of the June 2002 trial. Pl.'s Mot., Ex. 5, Kisseloff Affidavit and Billing Record. The MBTA does not dispute the number of hours reported by Kisseloff, and the Court will compensate him for his 1.5 hours of work.

## 2. Reasonable Hourly Rates

To determine a reasonable hourly rate, the Court must find the prevailing hourly rate in Boston for attorneys of comparable skill, experience, and reputation as Martino's three attorneys. Martino bears the burden of providing this Court with affidavits and other forms of evidence that: (1) establish his lawyers' skills and experience, and (2) inform the Court of the prevailing market rate in the community for attorneys with such qualifications. *See Blum,* 465 U.S. at 895–96 n. 11, 104 S.Ct. 1541 (1984); *System Management, Inc. v. Loiselle,* 154 F.Supp.2d 195, 209 (D.Mass.2001).

### a. Mitchell Notis

Notis requests an hourly rate of $260.00. In support of this request, he proffers his own affidavit regarding his qualifications, as well as an affidavit from his former colleague, Edward Kelly.

Notis's affidavit reveals that he has a long and impressive record as a litigator in the labor and employment field. He graduated from Georgetown University Law Center in 1978, worked at the American Federation of Government Employees from 1978 to 1985, worked as an employment litigator at Barron & Stanfield (a Boston law firm) until 1996, and now operates a solo practice specializing in employment law. Notis Affidavit, ¶¶ 2–8. Notis also works as a clinical instructor at Harvard Law School's Hale and Dorr Legal Services Center in Jamaica Plain, Massachusetts, where he supervises students in their representation of low-income employ-

ees. *Id.* at ¶ 9. Notis usually represents clients on a contingent fee basis; when he does charge them an hourly rate, that rate typically ranges between $150.00 per hour and $185.00 per hour, to accommodate their limited means. *Id.* at ¶¶ 11–12.

In support of his contention that $260.00 is the prevailing market rate for attorneys with his qualification, Notis offers, in addition to his own affidavit, an affidavit from Edward Kelly, his former partner at Barron & Stadfeld, P.C. Pl.'s Mot., Ex. 3. Kelly is the head of the litigation department at Barron & Stadfeld, and is also involved with setting billing rates for the firm's attorneys. *Id.* at ¶ 4. He asserts that if Notis were still employed at Barron & Stadfeld, his hourly rate would be $260.00. *Id.* The MBTA, on the other hand, contends that Notis has not produced sufficient evidence that $260.00 per hour is the prevailing market rate for attorneys such as himself. Def.'s Opp. at 3–4. It argues that Notis should receive no more than the $185.00 per hour that he typically charges his clients. *Id.* at 4.

Having considered both parties' arguments, the Court finds that $200.00 per hour to be a reasonable rate for Notis's time. Although Notis's time might well be charged to clients at $260.00 per hour were he still at a mid-sized law firm, he is currently a solo practitioner who did all of the work on Martino's case himself, without any assistance from junior attorneys, paralegals, or the like. Notis Affidavit at ¶ 19. Were Notis at a larger law firm, some of the work on Martino's case would no doubt have been performed by employees with significantly lower hourly rates. Accordingly, Kelly's affidavit fails to convince the Court that $260.00 per hour is the market rate for attorneys such as Notis. Rather, the Court considers $200.00 per hour to be a reasonable rate for Notis's work. *See, e.g., Connolly v.*

*Harrelson,* 33 F.Supp.2d 92, 95–96 (D.Mass.1999) (approving hourly rate of $200.00 for civil rights attorney with twenty-five years of experience); *McLaughlin by McLaughlin v. Boston Sch. Comm.,* 976 F.Supp. 53, 62 (D.Mass.1997) (Garrity, J.) (awarding hourly rate of $200.00 for civil rights attorney). The Court rejects the argument that Notis's hourly rate should be enhanced to reflect his risk in taking the case on a contingent fee basis, as the Supreme Court has held that such enhancements are not appropriate. *See City of Burlington v. Dague,* 505 U.S. 557, 566, 112 S.Ct. 2638, 120 L.Ed.2d 449 (1992); *Lipsett* 975 F.2d at 943.

Calculating the reasonable number of hours spent by Notis on the litigation in question as 375.275 total hours, and using a rate of $200 an hour, the Court finds the lodestar figure for Notis to be $75,055.00.

### b. Mary Sullivan

██ Mary Sullivan requests an hourly rate of $175.00, the rate she charged Martino. In support of this request, she states that she has worked since 1983 at Segal, Roitman, & Coleman, a labor and employment firm, first as an associate and then as a partner. Sullivan Affidavit, ¶ 3. She also asserts that $175.00 per hour was the rate charged by the firm for individual employment cases during the time that she represented Martino. *Id.* at ¶ 4. The MBTA does not dispute that $175.00 per hour is a reasonable rate for Sullivan, and the Court so finds. Accordingly, the lodestar figure for Sullivan is $1,645.00 (9.4 hours of work multiplied by $175.00).

### c. Andrew Kisseloff

██ Andrew Kisseloff requests an hourly rate of $200.00, the rate that he charged for his brief work on Martino's case. In support of this request, however, he states only that he has practiced law in Massachusetts since 1977 and that he once received attorney's fees at the rate of $250.00 per hour. Pl.'s Mot., Ex. 5, Kisseloff Affidavit, ¶¶ 2–3. The MBTA, accurately noting that the Court has been "told very little" about Kisseloff's background and qualifications, urges the Court to award him an hourly rate of $185.00. Def.'s Opp. at 4. The Court agrees with the MBTA's argument, and finds that $185.00 is indeed a reasonable rate for Kisseloff. Accordingly, the lodestar amount for Kisseloff is $277.50 (1.5 hours of work multiplied by $185.00).

### 3. Computing The Total

██ According to the above calculations, Martino is entitled to attorney's fees of $76,977.50 for the work of Notis, Sullivan, and Kisseloff on his case. The Court now proceeds to the MBTA's argument that Martino's total award of attorney's fees should be reduced to reflect what it characterizes as his "limited success at trial," in that Martino requested $380,000 from the jury and received only $50,000. Def.'s Mot. at 7–10.

Under *Hensley,* when a plaintiff has achieved "only limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained." 461 U.S. at 440, 103 S.Ct. 1933. This does not mean, however, that a plaintiff's award of attorney's fees cannot exceed his actual recovery; on the contrary, in *City of Riverside v. Rivera,* the Supreme Court expressly rejected that proposition. 477 U.S. 561, 564–581, 106 S.Ct. 2686, 91 L.Ed.2d 466 (1986) (holding that the amount of damages a plaintiff recovers is "only one of many factors that a court should consider in calculating an award of attorney's fees", *id.* at 574, 106 S.Ct. 2686, and upholding an award of attorney's fees for $245,456.25 for plaintiffs who had received a jury award of $33,350). The First Circuit has explained that a plaintiff's degree of success should be measured by viewing in combination the following three factors: the plaintiff's success

claim by claim; the relief actually achieved; and the societal importance of the vindicated right. *Coutin,* 124 F.3d at 338.

Viewing Martino's results in this light, the Court does not find that his success was so limited that the presumptively reasonable lodestar amount should be reduced. He prevailed on two out of his four claims, he received a monetary award that was far from nominal, and he vindicated the important civil right to bring a complaint before an anti-discrimination agency without facing adverse job consequences. Moreover, the Court has already eliminated from Martino's fee award the hours that his counsel spent on his unsuccessful and unrelated whistle blower claim. Accordingly, the Court will not further reduce his attorney's fees on the ground of his limited success.

### B. Costs

After reviewing Martino's request for costs, the Court finds the enumerated expenses of $6,471.70 to be reasonable and compensable. It also finds reasonable Sullivan's request for reimbursement of $15.00 for messenger costs. The MBTA does not object to these requested costs. Accordingly, the Court grants these costs in full.

## II. CONCLUSION

Martino's petition for attorney's fees and costs under the fee-shifting provisions of 42 U.S.C. § 2000e–5(k) and M.G.L. ch. 151B, § 9, is GRANTED. The lodestar figure is $76,977.50, and the costs are $6,486.70, which together amount to a total of $83,464.20. The MBTA is therefore ordered to pay this amount to Martino.

SO ORDERED.