**Richard MARTINEZ, Philip Romero, and Rosalia Mangual, Plaintiffs,**

v.

**Thomas M. HODGSON, Glenn H. Sturgeon, Romain Payant, Several Unknown Correction Officers from the Bristol County Jail—Ash Street Facility, Paul Silva, John Silva II, Shane Reul, Samuel Ortega, Adelino Souza, Stephen Ferreira, Bristol County, and the City of New Bedford, Defendants.**

No. CIV.A. 01–10261–WGY.

United States District Court, D. Massachusetts.

May 29, 2003.

---

8. Preamble to the Constitution of the United States.

William P Breen, Jr., Murphy, Hesse, Toomey, and Lehane, Quincy, MA, Judith Gail Dein, U.S. District Court, Boston, MA, Joseph G. Donnellan, Law Offices of Timothy M. Burke, Needham, MA, for The City of New Bedford, John Silva, II, Paul Silva, Adelino Souza, Samuel Ortega, Shane Reul, Stephen Ferreira, Defendants.

Jessica Diane Hedges, Hrones & Garrity, Boston, MA, Stephen B. Hrones, Hrones & Harwood, Boston, MA, Aderonke O.A. Lipede, Fitzhugh, Parker & Alvaro LLP, Boston, MA, for Philip Romero, Richard Martinez, Rosalia Mangual, Plaintiffs.

## MEMORANDUM AND ORDER

YOUNG, Chief Judge.

The plaintiffs, Richard Martinez ("Mr.Martinez"), Philip Romero ("Mr.Romero"), and Rosalia Mangual ("Ms.Mangual") (collectively, the "Plaintiffs") have brought the instant petition for attorney's fees against defendants Officer Paul Silva ("Officer Silva") and the City of New Bedford ("New Bedford"). After prevailing against Officer Silva at trial, the Plaintiffs entered into a settlement agreement with Officer Silva and New Bedford for $8,000, plus attorney's fees and costs to be determined by this Court. The Plaintiffs now seek a total of $77,935.74. Officer Silva and New Bedford ask this Court to reduce that amount substantially, charging that the fee petition is not supported by detailed contemporaneous billing records, allocates disproportionally the hours worked, makes no downward adjustment for failed claims brought by the Plaintiffs, claims excessive hours, seeks fees for duplicated work and for unnecessary tasks, and overstates the market rates for the Plaintiffs' attorneys.

## I. BACKGROUND

This action arose out of a series of events that the Plaintiffs—Mr. Martinez and Mr. Romero, who are brothers, and their mother, Ms. Mangual—allege took place on November 25 (Thanksgiving Day), 1999. Compl. [Docket No. 1] ¶ 13. In their complaint, Mr. Martinez and Mr. Romero alleged that on that date, New Bedford police officers John Silva II ("Officer Silva II"), Adelino Souza ("Officer Souza"), Samuel Ortego ("Officer Ortega"), Shane Ruel ("Officer Ruel"), and Stephen Ferreira ("Officer Ferreira")—all of whom were named as defendants—illegally arrested them without probable cause and maliciously prosecuted them. *Id.* ¶ 43. Mr. Martinez and Mr. Romero further al-

leged that when they were transferred to the Ash Street Facility of the Bristol County Jail and House of Correction, Officer Silva, along with several unknown Bristol County correction officers, used excessive force against them. *Id.* ¶ 41. In addition, they alleged that Officer Silva and Officer Silva II conspired with and instructed correction officers at the jail to use excessive force against them. *Id.* ¶ 46. Ms. Mangual, meanwhile, alleged that Officers Silva II, Souza, and Ferreira illegally entered her home without a warrant on that same date. *Id.* ¶ 45.

In total, the Plaintiffs' complaint originally included nine counts: (1) Mr. Romero's and Mr. Martinez's claim under 42 U.S.C. § 1983 against Officer Silva and several unknown correction officers relating to unreasonable seizure and excessive force [Count One], *id.* ¶ 41; (2) Mr. Romero's and Mr. Martinez's claim under 42 U.S.C. § 1983 against Officers Silva II, Ruel, Ortega, Souza, and Ferreira relating to illegal arrest and malicious prosecution [Count Two], *id.* ¶ 43; (3) Ms. Mangual's claim under 42 U.S.C. § 1983 against Officers Silva II, Souza, and Ferreira relating to unreasonable search and seizure [Count Three], *id.* ¶ 45; (4) Mr. Romero's and Mr. Martinez's claim under 42 U.S.C. § 1983 against Officers Silva, Silva II, and several unknown correction officers for conspiring to use excessive force [Count Four], *id.* ¶ 46; (5) the Plaintiffs' claim under 42 U.S.C. § 1983 against New Bedford for failure to train its officers and for tolerating a practice of excessive force [Count Five], *id.* ¶ 48; (6) the Plaintiffs' claim under 42 U.S.C. § 1983 against Thomas Hodgson (Sheriff of Bristol County), Glenn Sturgeon (Superintendent of the Bristol County Jail), and Romain Payant (Deputy Superintendent of the Bristol County Jail Ash Street Facility) for failure to train, supervise, and develop adequate policies to prevent the use of excessive force [Count

Six], *id.* ¶ 50; (7) the Plaintiffs' claim under 42 U.S.C. § 1983 against Bristol County for failure to train, supervise, and develop adequate policies to prevent the use of excessive force [Count Seven], *id.* ¶ 52; (8) the Plaintiffs' claim under Mass. Gen. Laws. ch. 12, § 11I against Officers Silva, Silva II, Ruel, Ortega, Souza, Ferreira, and several unknown correction officers for violations of their civil rights by threats, intimidation, and coercion [Count Eight], *id.* ¶ 54; and (9) Mr. Romero's and Mr. Martinez's claims of malicious prosecution, under the common law, against Officers Silva II, Ruel, Ortega, Souza, and Ferreira [Count Nine], *id.* ¶¶ 56–58.

Prior to trial, Counts Two, Three, and Nine were dismissed. As such, the defendants who actually went to trial were Officer Silva, Officer Silva II, New Bedford, Bristol County, the unnamed Bristol County corrections officers, Bristol Sheriff Hodgson, Bristol Superintendent Sturgeon, and Bristol Deputy Superintendent Payant.

The trial itself was conducted in two phases. The first phase of the trial was conducted against Officer Silva, Officer Silva II, and the unnamed Bristol County correction officers who had allegedly used excessive force against Mr. Martinez and Mr. Romero. At the conclusion of that phase, the jury returned a verdict in favor of Officer Silva II but against Officer Silva and the unknown Bristol County corrections officers. Specifically, the jury awarded Mr. Martinez and Mr. Romero compensatory damages consisting of their medical expenses for five days after the alleged assault, plus legal fees, and also awarded Mr. Romero punitive damages in the amount of $5,000. Mr. Martinez and Mr. Romero subsequently settled with Officer Silva and New Bedford, who promised to pay them $8,000, plus attorney's fees and costs to be determined by this

Court, given the status of Mr. Martinez and Mr. Romero as prevailing parties. Pls.' Mem. [Docket No. 85] at 3; Defs.' Opp'n [Docket No. 88] at 4 n. 1.

The second phase of the trial then proceeded against the Bristol County Sheriff's Department. After the case went to the jury, but before the jury returned with a verdict, Bristol County settled all matters relating to it, its officials, and its unnamed corrections officers (*including* attorney's fees and costs) for $27,500. Defs.' Opp'n at 4.

The Plaintiffs' instant motion for attorney's fees and costs thus arises specifically against Officer Silva and New Bedford, which agreed to pay such fees and costs as determined by the Court pursuant to the above-described settlement. In their fee petition [Docket No. 84] ("Pls.' Pet."), the Plaintiffs have separated out the hours spent solely with respect to the County of Bristol (with whom, as noted above, they have a separate settlement that includes attorney's fees). The Plaintiffs allege that all remaining hours should be compensated by Officer Silva and New Bedford. Pls.' Mem. at 3.

## II. DISCUSSION

The statute under which Mr. Martinez and Mr. Romero prevailed—42 U.S.C. § 1983—provides for attorney's fees to prevailing parties pursuant to the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988, and the settlement agreement between the Plaintiffs and New Bedford and Officer Silva provided that fees would be awarded on that basis. Pls.' Mem. at 3; Defs.' Opp'n at 4 n. 1. The Supreme Court has made clear that the lodestar approach, which computes attorney's fees by multiplying the number of hours reasonably spent on a case by a reasonable hourly rate, is the appropriate method of determining attorney's fees un-

der Section 1988. *See, e.g., Hensley v. Eckerhart,* 461 U.S. 424, 433 n. 7, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983); *Blum v. Stenson,* 465 U.S. 886, 897, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984).

 As such, the Court must determine both the number of hours reasonably spent on this case by Plaintiffs' counsel and the reasonable rate for those hours. Before doing so, however, the Court discusses the principles underlying its assessment of which hours are compensable in this case. Two key related issues arise here. First, the parties contest whether the records of Plaintiffs' counsel meet the required standards of detail and contemporaneity. Second, Officer Silva and New Bedford point out that the Plaintiffs prevailed only on a minority of their claims. They therefore suggest that hours spent pursuing unsuccessful claims should not be compensable, and protest the Plaintiffs' failure, in their fee petition, to allocate which hours were spent on which claims.

In *Grendel's Den, Inc. v. Larkin,* 749 F.2d 945, 952 (1st Cir.1984), the First Circuit held that "the absence of detailed contemporaneous time records, except in extraordinary circumstances, will call for a substantial reduction in any award or, in egregious cases, disallowance." In response to an order of this Court [Docket No. 90], the Plaintiffs, who initially submitted a typed outline listing the hours spent by their counsel in this case, have now submitted copies of the actual time slips that were kept contemporaneously. Those time slips are extremely general in nature, with descriptions such as "discovery review," "phone calls," "call from expert," and the like. With few exceptions, no detail is given regarding the nature of the factual or legal issues being discussed or reviewed.

As the First Circuit explained in *Lipsett v. Blanco,* 975 F.2d 934, 938 (1st Cir.1992), such general entries are problematic because they prevent the paying party from "disput[ing] the accuracy of the records as well as the reasonableness of the time spent." Accordingly, courts in the First Circuit commonly reduce by fifty percent fee petitions that lack sufficient detail. *See, e.g., id.* at 944; *Martino v. Mass. Bay Transp. Auth.,* 230 F.Supp.2d 195, 204 (D.Mass.2002); *Rolland v. Cellucci,* 106 F.Supp.2d 128, 135 (D.Mass.2000) (Neiman, M.J.). The Court will follow that practice here. In other words, once the Court has determined the number of compensable hours for each attorney, it will reduce that number in half before multiplying it by the relevant attorney's reasonable rate.

Officer Silva and New Bedford also argue that the Plaintiffs' fee petition fails to take account of the mix of successful and unsuccessful claims presented. The Court notes that the key issue here is the relationship between those claims. Generally, if unsuccessful claims are unconnected to, and easily severable from, the successful claims, hours spent on them will not be compensable. *See, e.g., Hensley,* 461 U.S. at 435–36, 103 S.Ct. 1933; *Lipsett,* 975 F.2d at 941. If, however, they are substantially related to the successful claims, either because they share a common core of facts or are based upon related legal theories, hours spent on them will be recoverable. *See id.*

Here, of course, even were the Court to conclude that the claims were sufficiently distinct and severable such that only those hours spent on the successful claims against Officer Silva should be compensa-

ble, the Court would be unable to identify those hours given the extremely general nature of the time slips. Rather, the only way in which the Court could take account of the unsuccessful claims would be to discount further the claimed hours by a certain percentage. *See, e.g., Lipsett,* 975 F.2d at 940–41 ("[W]here it would be an 'exercise in futility' to separate out the legal services rendered for each claim, the fee should simply be determined as a function of degree of success.") (internal citations and quotation marks omitted). On balance, however, the Court concludes that it is unnecessary to do so. The allegations against all of the defendants arose from a series of events that unfolded in the course of a single day, and Mr. Martinez and Mr. Romero did argue that Officer Silva's use of excessive force against them was connected to the events that had transpired between them and the other defendants.[1] The Court thus determines that a further discounting of the Plaintiffs' claimed hours, beyond the 50 percent deduction due to the inadequate detail in their records, is not warranted given the overlapping factual allegations in the various claims. That settled, the Court moves on to assess the hours claimed by the Plaintiffs' various counsel.

### A. Attorney Stephen Hrones

The Plaintiffs' chief counsel, Attorney Stephen Hrones ("Hrones"), seeks compensation for 70.25 hours of work on this case, at a rate of $350.00 per hour. Pls.' Pet., Ex. C (Computations of Attorney's Fees) at 7. As for the specific hours claimed by Hrones, Officer Silva and New Bedford contest only four. First, they contest the hour that Hrones spent on

---

**1.** For example, the Plaintiffs alleged that Officer Silva, when informing the Bristol County officials that Mr. Martinez and Mr. Romero were being sent to the Ash Street facility, stated "I'm sending you two numbskulls … treat them with extreme hospitality when they get there." Compl. ¶ 21.

October 26, 2002 discussing with his associate, Attorney Jessica Hedges ("Hedges"), the deposition of a member of the Bristol County Sheriff's Department of Internal Affairs. Defs.' Opp'n at 12. Officer Silva and New Bedford argue that this deposition was connected only to the policies of the Bristol County Sheriff's Department, not to the excessive force claim against Officer Silva. *Id.* This Court rules, however, that the deposition was sufficiently related to the excessive force claim against Officer Silva given the Plaintiffs' allegation that, in using excessive force, Officer Silva conspired with Bristol County corrections officers—who, presumably, are subject to the review of the Department of Internal Affairs. Thus, that hour is indeed compensable.

██ Second, Officer Silva and New Bedford point out that Hrones billed three hours for preparing opening remarks but that associate Hedges—who actually ended up delivering the Plaintiffs' opening statement—also billed six hours for preparing opening remarks. *Id.* at 16–17. They suggest that the entry of either Hrones or Hedges for the preparation of such remarks should be deleted. *Id.* The Plaintiffs, however, argue that such collaboration was necessary. Pl.'s Rep. Mem. [Docket No. 89] at 4 n. 1. This Court will not deduct such hours from either attorney's entry, recognizing that "the mere fact that more than one lawyer toils on the same general task does not necessarily constitute excessive staffing." *Gay Officers Action League v. Puerto Rico*, 247 F.3d 288, 298 (1st Cir.2001).

Of course, as noted above, the Court will reduce the hours claimed by Hrones by 50 percent as a sanction for the lack of detail in the fee application. That yields a result of 35.13 compensable hours performed by Hrones on this case.

██ The Court must now determine the reasonable hourly rate for Hrones. To determine this rate, the Court must identify the prevailing hourly rate in Boston for attorneys of comparable skill, experience, and reputation as Hrones. The Plaintiffs bear the burden of providing this Court with affidavits, as well as other forms of evidence, that establish Hrones' skill and experience and inform the Court of the prevailing market rate in the community for attorneys with such qualifications. *See, e.g., Blum,* 465 U.S. at 895–96 n. 11, 104 S.Ct. 1541; *Martino,* 230 F.Supp.2d at 205.

In support of Hrones' request for a rate of $350.00 per hour, he submits his resume, an affidavit, and the affidavits of two fellow attorneys, Howard Friedman and Robert Sinsheimer. Hrones' resume indicates that he received his law degree from the University of Michigan Law School in 1968 and has practiced criminal and police misconduct law in Boston since 1972. *See* Resume (attached to Pls.' Pet. at Ex. A). He has taught at Suffolk Law School, has served as an advisor at Harvard Law School and Northeastern Law School, and has published numerous articles and books. *Id.* He currently practices at the law office of Hrones & Garrity and attests that he considers $350.00 per hour to be a reasonable rate for an attorney of his "educational background, experience, and prior success in this field of specialty." *Id.; see also* Hrones Aff. [Docket No. 86] ¶ 4. Hrones also submits the affidavits of Howard Friedman ("Friedman") and Robert Sinsheimer ("Sinsheimer"), both of whom are longtime members of the Massachusetts Bar, have known Hrones for approximately twenty years, and attest that $350.00 is a reasonable hourly rate for him. *See* Friedman Aff. (attached to Pls.' Pet. at Ex. B); Sinsheimer Aff. (attached to Pls.' Pet. at Ex. C). In fact, Friedman cites a 2002 survey from Massachusetts Lawyers

Weekly regarding the hourly rates of partners in Boston law firms; those rates, according to his summary of the survey, apparently range from $200.00 to $575.00 per hour. Friedman Aff. at ¶ 7.

Officer Silva and New Bedford, however, argue that a rate of $350.00 for Hrones is excessive. Defs.' Opp'n at 18. Based upon its examination of recent precedent from this District regarding the prevailing market rate for the plaintiff's civil rights bar, this Court agrees. *See, e.g., Baione v. City of Boston,* No. Civ.A.01–11313, 2003 WL 79034, at *2 (D.Mass. Jan.9, 2003) (O'Toole, J.) (awarding hourly rate of $225.00 to plaintiffs' attorney in civil rights case); *Martino,* 230 F.Supp.2d at 205 (awarding hourly rate of $200.00 to plaintiff's attorney in civil rights case); *Rolland,* 106 F.Supp.2d at 143 (awarding hourly rate of $250.00 to plaintiff's lead attorney in civil rights case).

In accordance with the above precedent, the Court concludes that $225.00 per hour is a reasonable rate for Hrones's work. Given that the Court has found 35.13 of Hrones's hours on this case to be compensable, that yields a lodestar of $7904.25 for Hrones.

### B. Attorney Aderonke Lipede

▮▮▮ The Plaintiffs allege that attorney Aderonke Lipede ("Lipede") spent 38.05 hours working on their case and seek compensation for her at a rate of $200.00 per hour. Pls.' Pet., Ex. C (Computations of Attorney's Fees) at 7. Officer Silva and New Bedford contest 26.2 of those hours. First, they note that Lipede has claimed fees for three hours spent "drafting M.G.L. letters" on February 8 and 9, 2001,

but that the claims brought in the Plaintiffs' complaint did not require such letters.[2] Defs.' Opp'n at 10. This Court agrees, and deducts those hours. Second, they argue that the four-and-a-half hours Lipede spent at Bristol County Internal Affairs Division did not relate to Officer Silva and thus should not be compensable. *Id.* at 10. For the reasons set forth above, *see supra* p. 10, this Court disagrees, concluding that those hours are sufficiently related to the claim against Officer Silva to warrant recovery. Third, they point out that Lipede reports one half-hour allegedly spent on discovery responses on September 3, 2000, even though the complaint in this action was not filed until February 13, 2001. Defs.' Opp'n at 13. This Court agrees that this half-hour should be eliminated. Finally, they argue that the 18.2 hours Lipede allegedly spent preparing the Plaintiffs' Complaint are excessive and should be reduced or denied. *Id.* at 13. While the Court agrees that this figure is high, the Court elects to address this matter by taking it into account in determining the appropriate rate for Lipede.

That results in 34.55 hours spent by Lipede on this case, which the Court further reduces by fifty percent as a sanction for the records' lack of sufficient detail. Ultimately, therefore, Lipede is entitled to compensation for 17.28 hours.

▮▮▮ The Court must now determine an appropriate hourly rate for Lipede. In their fee petition, the Plaintiffs have included not a single detail about Lipede's qualifications. They do not inform the Court as to when, and from what school, she received her law degree; nor do they inform the Court as to how many years

---

**2.** Officer Silva and New Bedford state, and this Court agrees, that this entry presumably refers to presentment letters allegedly sent to the various defendants as a precondition to suit under the Massachusetts Tort Claims Act,

Mass. Gen. Laws. ch. 258, § 4. Defs.' Opp'n at 10. The Plaintiffs, however, did not include a claim under this statute in their Complaint.

Lipede has been practicing as an attorney.[3] In short, they have manifestly failed to meet their burden of providing this Court with evidence that establishes Lipede's skills and experience. Accordingly, the Court agrees with the position of Officer Silva and New Bedford that an hourly rate of $120.00 is more appropriate. *See, e.g., United States ex rel. Averback v. Pastor Medical Associates, P.C.*, 224 F.Supp.2d 342, 356 (D.Mass.2002) (noting that this Court considers $120.00 per hour to be an appropriate rate for junior associates). This results in a lodestar of $2073.60 for Lipede.

## C. Attorney Jessica Hedges

The Plaintiffs allege that Hedges spent 181.3 hours on their case and seek an hourly rate for her in the amount of $200.00 per hour. Pls.' Pet., Ex. C (Computations of Attorney's Fees) at 7. Officer Silva and New Bedford contest 38.5 of those hours. First, they dispute 10.6 hours that Hedges spent on various efforts connected to the Bristol County Sheriff's Department, including an attempt to amend the Plaintiffs' Complaint to name the specific Bristol County corrections officers who, along with Officer Silva, used excessive force (.6 of an hour on October 11, 2002, 2.5 hours on October 16, 2002, 1 hour on October 23, 2002, 3.8 hours on October 25, 2002, 1 hour on October 26, 2002, and 1.7 hours on October 29, 2002). Defs.' Opp'n at 11–12; *see also* Pls.' Pet., Ex. C (Computations of Attorney's Fees) at 3–4. The Court has already determined, however, that such hours were sufficiently related to the Plaintiffs' claim against Officer Silva to warrant recovery. Second, they point out that Hedges claims one hour for mediation preparation on October 15, 2002, even though the mediation

had already taken place the day before. Defs.' Mem. at 13. The Court agrees that this hour is not compensable. Third, they attack Hedges' claim for .4 hours on August 21, 2002 for "conversation with jail, re: clients [sic] status." *Id.* Although the Court agrees that this entry is vague, the Court has addressed this issue by reducing by fifty percent the Plaintiffs' fee petition due to its vagueness. Officer Silva and New Bedford also claim that Hedges' hours spent on jury instructions—14.5 in total, often combined with other entries such as "special interrogatories"—are excessive. Defs.' Opp'n at 15. As with Lipede, however, the Court elects to deal with this issue by taking it into account in its determination of Hedges' appropriate hourly rate. For the same reason, the Court will not reduce the 2.5 hours spent by Hedges on October 23, 2002 in preparation for the pretrial conference, although Officer Silva and New Bedford consider it excessive. Defs.' Opp'n at 15. As noted above, the Court also rejects the request of Officer Silva and New Bedford to disallow either Hrones' or Hedges' claim for hours spent in preparing the opening remarks. Finally, the Court rejects their argument that Hedges' 3.5 hours researching and writing a motion to compel are not compensable, Defs.' Opp'n at 17, despite the fact that the Court ultimately denied the motion.

That leaves 180.3 hours worked by Hedges. An important matter, however, has come to the Court's attention by way of the Opposition of Officer Silva and New Bedford to the Plaintiffs' fee petition. Defs.' Opp'n at 8–10. Throughout the time that Hedges represented the Plaintiffs and appeared in this Court, she had not yet been admitted to practice in the United States District Court for the District of

---

**3.** Apparently, Officer Silva and New Bedford are under the impression that Lipede was admitted to the Massachusetts Bar in 1994. Defs.' Opp. at 18.

Massachusetts, although she was a member of the Massachusetts Bar. The Court has confirmed with the appropriate personnel, and the Plaintiffs have not disputed, that Hedges was not admitted to practice in this District until January 23, 2003. The trial in this case began on January 6, 2003, and concluded on January 14, 2003.

This District's Local Rules set forth the procedure by which an attorney who is not a member of this District's Bar may obtain *pro hac vice* status and thereby appear and practice in court in a particular case. Specifically, Local Rule 83.5.3(b) provides that:

> An attorney who is a member of the bar of any United States District Court or the bar of the highest court of any state may appear and practice in this court in a particular case by leave granted in the discretion of the court, provided he files a certificate that (1) he is a member of the bar in good standing in every jurisdiction where he has been admitted to practice; (2) there are no disciplinary proceedings pending against him as a member in any jurisdiction; and (3) he is familiar with the Local Rules of the United States District court for the District of Massachusetts; and provided further, his application for leave to practice in this Court is on motion of a member of the bar in this court, who shall also file an appearance. *An attorney seeking admission under this subsection may not enter an appearance or sign any papers until his application has been granted,* except that the attorney may sign a complaint or any paper necessary to prevent entry of default for failure to answer or otherwise plead, provided such complaint or other paper is accompanied by his application for admission in proper form.

Local Rule 83.5.3(b) (emphasis added).

Hedges simply failed to comply with this procedure. The Plaintiffs claim that she had "formally commenced the application process required under Local Rule 83.5.3. on October 23, 2002, well in advance of the trial in this case," and that she did not receive her certificate of good standing until December 31, 2002. Pls.' Rep. Mem. at 3. That argument fails to recognize, however, that Hedges could have obtained *pro hac vice* status prior to the trial—which began on January 6, 2003—pursuant to the above process. To the extent that Hedges was unable to do so, she should have informed the Court of the situation. Instead, she entered an appearance in this Court on October 23, 2002, and continued to represent Mr. Martinez and Mr. Romero at the subsequent trial, without mentioning her lack of admission.

The First Circuit has stated that, under Local Rule 83.5.3(b),

> "an attorney who lacks pro hac vice status may be viewed as being on the same footing as a non-lawyer. Such a layperson, of course, is not entitled to § 1988 fees. Thus, an attorney . . . who engages in legal activities without having been admitted pro hac vice, accepts the risk that if his or her application for admission is denied, § 1988 fees will not be forthcoming."

*Nationalist Movement v. City of Boston,* 201 F.3d 428, 1999 WL 700497 (1st Cir. 1999) (unpublished opinion) (internal citations and quotation marks omitted). Here, as noted above, Hedges' application for admission was ultimately granted, albeit after the trial's conclusion. The fact remains, however, that each time Hedges appeared in this Court on behalf of Mr. Martinez and Mr. Romero, she did so without having obtained *pro hac vice* status, in direct violation of Local Rule 83.5.3. This Court concludes that the appropriate solution is not to compensate Hedges for any hours during which she appeared in Court.

Those appearances gave rise to a total of 25 hours (1.5 hours on October 23, 2002, six hours on January 6, 2003,[4] five hours on January 7, 2003, 5.5 hours on January 9, 2003, and seven hours on January 10, 2003), which the Court deducts. Pls.' Pet., Ex. C (Computations of Attorney's Fees) at 4–6. That leaves 155.30 hours worked by Hedges, which the Court further reduces by fifty percent to take account of the lack of detail in the time records, yielding a total of 77.65 hours.

As for a reasonable rate for those hours, the Plaintiffs have again failed to provide any information whatsoever regarding Hedges' qualifications.[5] They simply assert that she is entitled to the same $200.00 hourly rate that they claim for Lipede. Hrones Aff. at ¶ 6. Instead, the Court will compensate her at the same $120.00 hourly rate that it deemed reasonable for Lipede (as a "junior associate"), yielding a lodestar for Hedges of $9318.00.

### D. Unidentified Law Students

■ Finally, the Plaintiffs seek compensation for an unidentified number of law students [6] who worked on their case. This time adds up to 55.5 hours; Officer Silva and New Bedford dispute 12 of those hours. Three of those hours relate to research regarding the Bristol County Sheriff's Department, Defs.' Opp'n at 11–12, and, for the reasons set forth above, *see supra* p. 10, are compensable. The remaining nine hours relate to the stu-

dents' work in preparing jury instructions, an amount that Officer Silva and New Bedford deem excessive. Defs.' Opp'n at 15. The Court, again, addresses this concern by taking it into account when determining the appropriate hourly rate. As such, all 55.5 hours will be compensable, but the Court reduces that number by fifty percent due to the lack of sufficient detail. That leaves 27.75 hours to be compensated.

■ The Court disagrees with the Plaintiffs' contention that $90.00 per hour is an appropriate rate for these students, particularly given the lack of any information regarding, for example, whether they were in their first, second, or third year of law school. The Court rules that $60.00 per hour is a more appropriate rate. *See, e.g., Stanton v. S. Berkshire Reg. Sch. Dist.,* 28 F.Supp.2d 37, 42, 44 (D.Mass. 1998) (Ponsor, J.) (stating that if plaintiffs were entitled to attorney's fees, rate for law student would be $60.00 per hour). That yields a lodestar figure of $1665.00 for the law students' work.

### E. Costs

■ Finally, the Plaintiffs request $4,393.64 [7] in costs. Officer Silva and New Bedford ask this Court to eliminate those costs relating to the Plaintiffs' counsel's interview with the internal affairs officer at the Bristol County Sheriff's Department. Defs.' Opp'n at 19. For the rea-

---

4. Hedges' entry for this date reports eight hours for "trial prep, trial, [and] meeting with witness." The Court assumes that six of those hours relate to trial and court travel time, given Hrones' report that he had six hours of "trial time" on that date.

5. According to Officer Silva and New Bedford, Hedges was admitted to the Massachusetts Bar in the year 2000. Defs.' Opp'n at 18.

6. The number of such students is unclear; Hrones refers to "students" in his affidavit. Hrones Aff. at ¶ 6.

7. There is a typographical error in the Plaintiffs' fee petition. In their itemized list of costs, they report the total costs as $4393.64. In their summary of the total bill, however, they report the total costs as $4393.24. The Court has added the costs and has determined that the $4393.64 figure is correct.

sons set forth above, however, the Court deems that work to be sufficiently related to the excessive force claim against Officer Silva to justify attorney's fees and costs. The Court will, however, deduct the costs of service to the Bristol County defendants because those defendants are parties to a separate settlement agreement that independently provides for attorney's fees and costs. The following entries are therefore eliminated: (1) the 6/5/01 service to the Bristol County Constable's Office (Maria Lopes), which cost $53.90; (2) the 6/5/01 service to the Bristol County Constable's office (Romain Payant), which cost $49.60, (3) the 6/5/01 service to the Bristol County Constable's Office (Thomas Hodgson and Glen Sturgeon), which cost $82.60; and (4) the 11/7/02 service to Bristol County Sheriff's Office (Manuel Leite), which cost $96.75. That yields a new total of $4110.79.

## III. CONCLUSION

Based upon the above calculations, the Plaintiffs are entitled to $20960.85 in fees ($7904.25 for Hrones, $2073.60 for Lipede, $9318.00 for Hedges, and $1665.00 for the law students). They are also entitled to $4110.79 in costs. That results in a total of $25071.64. Officer Silva and New Bedford are therefore ordered to pay $25071.64 to the Plaintiffs, pursuant to the settlement in which they agreed to pay attorney's fees and costs as determined by this Court.

SO ORDERED.