**David ZURAKOWSKI, Plaintiff,**

v.

**Raymond D'OYLEY, Defendant.**

No. Civ.A. 97–11183–WGY.

United States District Court,
D. Massachusetts.

April 12, 1999.

Howard Friedmen, Boston, MA, for David Zurakowski, plaintiff.

Andrea W. McCarthy, City of Boston Law Department, Boston, MA, for Raymond D'Oyley, defendant.

## MEMORANDUM AND ORDER

YOUNG, Chief Judge.

The present application for attorney's fees presents a recondite question of first impression in the application of the provisions of the Massachusetts Civil Rights Act, Mass.Gen.Laws ch. 12, § 11I. Although the question presented is apparently unique, the facts may be simply stated.

The plaintiff, David Zurokowsky ("Zurokowsky"), sued the defendant, Raymond D'Oyley ("D'Oyley"), a Boston police officer, for violation of the federal civil rights act, 42 U.S.C. § 1983, the Massachusetts Civil Rights Act, and wrongful arrest arising out of Zurokowsky's arrest by D'Oyley after allegedly running a red light at the corner of Charles and Beacon Streets. The case was well tried by distinguished counsel for both sides who throughout displayed a commendable focus on matters actually in dispute.

One result of this focus was that, during the charge conference, counsel and the Court all agreed that no separate mention to the jury need be made of the Massachusetts civil rights claim, as its resolution necessarily followed that of its federal counterpart. We reasoned that, since neither the fact of Zurokowsky's arrest nor D'Oyley's exercise of state action was here disputed, the undisputed coercion involved in taking Zurokowsky into custody supplied that element of the Massachusetts civil rights claim, *see, e.g., Planned Parenthood League of Mass. v. Blake,* 417 Mass. 467, 474 n. 8, 631 N.E.2d 985 (1994), and thus the sole issue remaining for decision was the justification for the arrest— an issue as to which the federal and state civil rights acts spoke as one, viz., was there probable cause to take Zurokowsky into custody? Indeed, all three claims could properly have been charged as one were it not for the fact that the federal and state civil rights claims place the burden of proving the absence of probable cause on the complaining plaintiff, while at common law in Massachusetts a police officer who arrests without a warrant—as was the case here—bears the burden of proving probable cause. *See Mendonza v. Commonwealth,* 423 Mass. 771, 791 n. 8, 673 N.E.2d 22 (1996). It was necessary, therefore, to explain to the jury the two separate theories of liability and properly to allocate the respective burdens of proof. This the Court did, without objection.

The jury, as sometimes happens, found that neither party had sustained the burden of proof placed on him on the central probable cause issue. Thus the jury found for D'Oyley on the civil rights claims but— the fact of the arrest being undisputed— found that he had not himself proved probable cause and thus had wrongfully arrest-

ed Zurokowsky, assessing damages of $2,760.00 against him.

Zurokowsky's counsel takes no issue with the foregoing recital and admits he lost the civil rights claims but, having achieved a recovery for his client on the wrongful arrest claim, he argues that Zurokowsky is nevertheless the "prevailing" party entitled to a reasonable attorney's fee. He points out that "a party **prevails** under Mass.Gen.Laws ch. 12, § 11I when he or she achieves success on a substantial question of law arising out of a common nucleus of facts that gives rise to a cause of action under the statute." *Batchelder v. Allied Stores Corp.,* 393 Mass. 819, 822, 473 N.E.2d 1128 (1985) (emphasis supplied).

*Batchelder,* of course, may be distinguished from the present case in that there recovery was had through a declaratory judgment and there was not—as is the case here—a jury rejection of the Massachusetts civil rights claim. Such an analysis, however, fails to give the *Batchelder* court's generous construction of the Massachusetts civil rights statute its due. It appears, rather, that the proper ground of distinction rests on whether the "success ... arising out of a common nucleus of facts [is] on a **substantial** question of law." *Ibid.* (emphasis supplied). That was the case in *Batchelder. Ibid.* That is not the case here.[1] Accordingly, Zurokowsky's application for attorney's fees must be denied as matter of law.

As the issue is one of first impression, however, and affords the Supreme Judicial Court the opportunity to speak to the reach of one of the Commonwealth's most important statutes, upon application the Court will consider certifying the issue pursuant to the Supreme Judicial Court's Rule 1:03.

---

1. The Court supposes that Zurokowsky could theoretically argue—he has not—that were this Court to rule that the tort of wrongful arrest now carries an attorney's fee award under Mass.Gen.Laws ch. 12, § 11I, such ruling would be "substantial." Engrafting such a statutory award on a Massachusetts common law remedy is, however, a matter for the courts of the Commonwealth, not this court. *See Pyle v. South Hadley Sch.,* 55 F.3d 20, 22(1st Cir.1995).

To allow the parties intelligibly to assess their positions and to bring any further proceedings at the trial level to an end, the Court indicates that, were an attorney's fee authorized, a reasonable attorney's fee in this case to this point amounts to $ 20,400.00. This is the sum requested by Zurokowsky's counsel, whose conduct, efficiency, and professionalism has been exemplary throughout,[2] less the one-third reduction for non-core time that is now becoming commonplace in civil rights attorneys' fee awards. *See Brewster v. Dukakis*, 3 F.3d 488, 492 n. 4 (1st Cir.1993).

2. The Court thus approves an in-court hourly rate of $ 240 for Zurokowsky's counsel. While such a rate is fully justified in this case inasmuch as counsel is one of the foremost practitioners in this field and, indeed, is sought out to teach the bar concerning these issues, *see* Suing the Government: Section 1983 in 1998 (Massachusetts Bar Institute, Nov. 1998), there is the danger that as one judge sees another approve a particular hourly rate, *see, e.g., Connolly v. Harrelson*, 33 F.Supp.2d 92, 95–96 (D.Mass.1999), citing *Guckenberger v. Boston Univ.*, 8 F.Supp.2d 91, 105 (D.Mass.1998) (Saris, J.) and *McLaughlin v. Boston School Committee*, 976 F.Supp. 53, 60 (D.Mass.1997) (Garrity, J.), court-awarded attorney's fees will climb faster than the actual economics of the legal marketplace.

The Court notes that the most recent Massachusetts Bar Association study places the average Massachusetts hourly rate at $135, William T.G. Litant, "MBA survey reports lawyer incomes stagnant," 5 MBA Lawyers Journal (April 1998) at 1, and an even more current PricewaterhouseCoopers study of in-house counsel hourly rates fixes the fully loaded national average at $159. PricewaterhouseCoopers, 1998 Law Department Spending Survey: Executive Summary at 4. More troubling is the fact even in death penalty litigation—surely the most stark form of civil rights litigation—the national average hourly rate is $106.30 (exclusive of California). PricewaterhouseCoopers, Study on the Cost of Private Panel Attorney Representation in Federal Habeas Corpus Cases from 1992 to 1995: Executive Summary at xiv. Thus, the approval here of an in-court rate of $240 ought not be taken as some emerging Massachusetts standard.