Richard PARKER, Plaintiff,

v.

**TOWN OF SWANSEA,**
et al., Defendants.

No. CIV.A.01–10063–JGD.

United States District Court,
D. Massachusetts.

Feb. 5, 2004.

William P Breen, Jr., Murphy, Hesse, Toomey, and Lehane LLP, Quincy, MA, for Swansea, Town of, Mark Haslam, Richard Roussel, William O. McGrath, Defendants.

John J. Davis, Pierce, Davis & Perritano, LLP, Boston, MA, for Swansea, Town of, Mark Haslam, Richard Roussel, William O. McGrath, Defendants.

Douglas I. Louison, James W. Simpson, Jr., Merrick, Louison & Costello, Boston, MA, for Somerset, Town of, Jeffery Cote, Defendants.

Barry Ward, New London, CT, for Richard Parker, Plaintiff.

## MEMORANDUM OF DECISION AND ORDER ON PLAINTIFF'S MOTION FOR FEES AND COSTS [1]

DEIN, United States Magistrate Judge.

### I. INTRODUCTION

The plaintiff, Richard Parker ("Parker"), filed the instant "Motion for Plaintiff's Attorney's Fees and Costs" (Docket # 139) pursuant to 42 U.S.C. § 1988 as the prevailing party following a jury trial. In the underlying lawsuit, Parker alleged that his constitutional and state law rights were violated on February 20, 1998 when he was shot a number of times by police following a car chase which resulted in his arrest. Suit was originally brought against three Swansea Police Officers, one Somerset Police Officer, and the Towns of Swansea and Somerset. Many claims were dismissed at the summary judgment stage, and both Somerset defendants settled prior to trial. The case proceeded to trial against the Town of Swansea and three Swansea policemen. A jury verdict was returned in favor of all the defendants except for Swansea's Officer Richard Roussel. The jury awarded Parker $250,000 in compensatory damages, but declined to award any punitive damages. On June 25, 2003, the court entered judgment nunc pro tunc to June 17, 2003, the date of the jury verdict, in Parker's favor against Officer Roussel on Counts I (42 U.S.C. § 1983) and VII (assault and battery).

In the instant motion, Parker seeks $171,000 in attorney's fees for the work done in connection with this case by his counsel, Attorney Barry Ward; $15,240 for the work done by Attorney Ward's paralegal, Ms. Tonia Marable; and $15,695.30 in costs. Parker contends that Attorney

---

1. The parties consented to transfer the case to this court for all purposes, including trial and the entry of final judgment, pursuant to 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73.

Ward is entitled to $250/hour for 684 hours of work and Ms. Marable is entitled to $30/hour for 508 hours of work. Officer Roussel does not object to the hourly rate sought by Ms. Marable, but, for various reasons, contests the hourly rate sought by Attorney Ward, the number of hours sought by both Attorney Ward and Ms. Marable, and several items Parker has sought to tax as costs.

For the reasons detailed herein, the court concludes that Parker is entitled to $95,836.65 in legal fees and $11,758.40 in costs. Thus, Parker's motion is AL-LOWED IN PART and DENIED IN PART and judgment will enter according-ly.

## II. *STATEMENT OF FACTS*

### *The Underlying Case*

The facts of this case as established at trial are detailed more fully in this court's Memorandum of Decision and Order on Defendant Richard Roussel's Renewed Motion for Judgment as a Matter of Law which was recently issued. Briefly, the relevant facts are as follows:

On the evening of February 19, 1998, Parker drove his jeep from his home in New London, Connecticut to attend a concert at a club in Providence, Rhode Island. He discovered that the club was closed, and was traveling home when he got lost in Massachusetts. At approximately 12:20 a.m., Swansea Police Officer William McGrath pulled Parker over, contending that Parker was driving erratically. Swansea Officer Marc Haslam also arrived at the site of the stop in another marked Swansea Police Department vehicle. After Officer McGrath exited his cruiser to approach Parker's jeep, Parker got scared and drove away, fleeing on to a nearby highway. Officer McGrath pursued Parker, and was soon joined by Swansea Offi-cers Roussel and Haslam and Somerset Police Officer Jeffrey Cote.

After a while, a sergeant at the Swansea Police station who had been monitoring the chase called off the pursuit, and the officers complied. However, Parker abruptly cut across the highway and im-mediately took an exit. As Parker was taking the exit, he lost control of his jeep and went off the road, hitting a tree and landing in a ditch.

All four police cars also took the exit and stopped near the crash site. Officer Rous-sel immediately approached Parker's jeep by, in his own words, "walking quickly" with his flashlight in one hand and his service firearm in the other. The parties dispute what happened next, but it is un-disputed that Officer Roussel shot at Par-ker multiple times from close range and then dove for cover. According to Parker, he was trying to surrender with his hands out in front of him. Officer Roussel claims that he thought Parker had a gun and was going to shoot him. Hearing Officer Rous-sel's shots and seeing him fall, all three of the other police officers at the site began shooting at Parker as well.

Ultimately, Massachusetts State Police ballistics testing conclusively determined that the police officers fired a total of forty-nine shots at Parker. Between six and eight of these bullets struck him. These shots hit him in the foot, four places in his legs, his penis, and his abdomen. Parker was ultimately subdued and arrest-ed. He was then taken by ambulance, and then helicopter, to the hospital where he was listed in critical condition. Although the area was searched, no weapon was ever found, and Parker has consistently denied being armed.

### *Procedural History*

On January 12, 2001, Parker filed an eight count Complaint alleging (1) that

each individual officer violated 42 U.S.C. § 1983 on eight separate grounds, including, *inter alia,* violating Parker's right to be free from the use of excessive force, arresting Parker without probable cause, and violating Parker's right to be free from unreasonable searches and seizures (Count I); (2) that the officers violated Parker's rights as protected by the Massachusetts Civil Rights Act ("MCRA") for the same reasons (Count II); (3) that the Towns of Somerset and Swansea violated Mass. Gen. Laws ch. 258, § 2, the Massachusetts Torts Claim Act ("MTCA"), by negligently supervising, disciplining, and training the officers (Counts III–IV); (4) that both towns were liable under 42 U.S.C. § 1983 for failing to train its officers in various areas (Counts V–VI); (5) that each officer committed assault and battery under Massachusetts law (Count VII); and (6) that the three Swansea officers also were liable for malicious prosecution under state law (Count VIII).

Eventually, all the defendants moved for summary judgment on all counts. This court allowed Somerset's motion as to both counts directed to that town, and dismissed the malicious prosecution claim against the Swansea officers. However, this court allowed the case to proceed against all the individual officers on the claims alleging violations of 42 U.S.C. § 1983, the MCRA, and assault and battery, and allowed the case to proceed against Swansea on the claims alleging violations of 42 U.S.C. § 1983 and the MTCA. (*See generally* Memorandum of Decision and Order on Defendants' Motions for Summary Judgment (Docket # 93)). This court also limited the civil rights claims to charges of excessive use of

force, finding that Parker had waived his other grounds. (*Id.* at 8 n. 1).

Immediately before trial, Parker sought leave to file a 74 page amended complaint adding a multitude of new factual allegations, but no new claims. The motion was denied. On the first day of trial, and before testimony started, Somerset Officer Cote reached a settlement on all of the claims remaining against him. During the trial, Parker waived his MTCA and MCRA claims. After the case against the remaining defendants was tried to a jury, a verdict was returned in favor of the Town of Somerset and Somerset Officers McGrath and Haslam. The jury responded to special questions, and found that Officer Roussel had violated Parker's constitutional rights by using excessive force,[2] and awarded Parker $250,000 in compensatory damages. No punitive damages were awarded. As a result of the jury's answers to the special questions, the court entered judgment in favor of Parker and against Officer Roussel on the counts alleging a violation of 42 U.S.C. § 1983 and assault and battery in the total amount of $250,000 plus pre-judgment interest, as authorized by the jury verdict. The issue of attorney's fees and costs was deferred pending further briefing.

### The Record on Attorney's Fees and Costs

After seeking several extensions, on July 31, 2003 Parker filed the instant motion for fees and a bill of costs. (Docket # 139). He also filed affidavits from his counsel, Barry Ward, and Attorney Ward's paralegal, Tonia Marable, along with a lengthy collection of billing records. (Docket # 140). No memorandum in sup-

---

**2.** Because the assault and battery claim substantially overlapped with the excessive force claim, with the agreement of the parties that the jury's verdict on the constitutional claim would be controlling on the state law claim, the court did not specifically instruct the jury on the assault and battery claim.

port of the fee request was filed. On August 26, 2003, Officer Roussel filed a detailed opposition to Parker's motion, contesting Attorney Ward's hourly rate, as well as objecting to specific items for which compensation was being sought. (Docket # 143 (objection to fees ("Fees Opp.")) and # 144 (objection to costs) ("Costs Opp.")).

A hearing on the request for fees as well as other post-trial motions was held on August 27, 2003. After reviewing the submissions and hearing argument, this court found that Parker had failed to carry his burden of establishing the prevailing rate for comparable legal services in the community. The only evidence Parker had presented was Attorney Ward's own affidavit which provided that he had spoken to three lawyers and that, as a consequence, it was his "understanding ... that for litigating a Civil Rights case an hourly rate of Two Hundred Fifty Dollars per hour is a reasonable and usual rate for an attorney of Twenty Five years of experience." (Ward Affidavit (Docket # 140) at ¶¶ 5, 6). Officer Roussel also requested additional time to determine whether he had further objections to the request for fees and costs. Consequently, the court entered an order permitting Officer Roussel to file supplemental materials by September 19, 2003, requiring Parker to file any supplemental materials addressing both the hourly rate issue and Officer Roussel's objections by October 20, 2003, and authorizing Officer Roussel to file a response by October 31, 2003.

Officer Roussel initially did not supplement his materials. Parker filed the affidavit of Attorney Howard Friedman to support his hourly rate. In addition to detailing his own experience, Attorney Friedman asserted that, in his opinion, "the fair market value of legal services is best measured by the rates charged for complex litigation by senior partners in large Boston law firms" and that those hourly rates ranged from $190 to $575 per hour. (Friedman Affidavit (Docket # 147) at ¶ 5). Parker did not file a response to any of the objections Officer Roussel had raised. Officer Roussel then filed a supplemental objection challenging the filing of Attorney Friedman's Affidavit on that grounds that it used an inappropriate standard for billing rates, and provided no information as to what rate Attorney Ward should receive. (Docket # 148).

No party has requested an evidentiary hearing on the issue of fees and costs. Based on the information presented in the parties' initial and supplemental submissions, as well as the argument of counsel on August 27, 2003, this court concludes that no evidentiary hearing is necessary and that further argument would not assist the court.

## III. DISCUSSION

### A. The Standard for Statutory Attorney's Fees

 Attorney Ward contends that he is entitled to payment for 684 hours of legal work at the rate of $250/hour and that Ms. Marable should be paid $30/hour for 508 hours.[3] It is Officer Roussel's position, on the other hand, that the court should deny Attorney Ward any fees altogether[4] or, alternatively, find that a rea-

---

3. It is well settled that time spent by paralegals can be recovered under 42 U.S.C. § 1988. See, e.g., Lipsett v. Blanco, 975 F.2d 934, 939 (1st Cir.1992).

4. Under "special circumstances" it may be appropriate for a court to deny a prevailing party any attorneys' fees. Poy v. Boutselis, 352 F.3d 479, 490 (1st Cir.2003). However, such circumstances, which include, "irresponsible litigation strategy, minimal accom-

sonable rate for Attorney Ward's services should not exceed $125–$150/hour. Officer Roussel further challenges the total number of hours for which compensation is being sought. For the reasons that follow, this court finds that Attorney Ward is entitled to payment for 485.7 core hours at a rate of $180.00/hour; 94.7 hours of non-core work at a rate of $120/hour; and that Ms. Marable is entitled to $30.00/hour for 465.3 hours.

 Under 42 U.S.C. § 1988(b), "the court, in its discretion, may allow the prevailing party [in a § 1983 civil rights suit], . . . a reasonable attorney's fee as part of the costs" to which a prevailing party is ordinarily entitled under Fed.R.Civ.P. 54(d). 42 U.S.C. § 1988(b). The purpose of § 1988 is to "ensure effective access to the judicial process for persons with civil rights grievances . . . not to serve as full employment or continuing education programs for lawyers and paralegals." *Lipsett v. Blanco*, 975 F.2d at 938 (internal citation and quotation omitted). While the statute is "couched in permissive terminology," awarding fees in favor of prevailing civil rights plaintiffs is "virtually obligatory." *Gay Officers Action League v. Puerto Rico*, 247 F.3d 288, 293 (1st Cir.2001), and cases cited.

 There is no dispute here that Parker is a "prevailing plaintiff" within the meaning of § 1988(b), thus that requirement is not an issue. However, the mere fact that a plaintiff is a "prevailing party" does "not mean that they can recover for all the time spent in this litigation." *Alfonso v. Aufiero*, 66 F.Supp.2d 183, 191 (D.Mass.1999) (internal citation and quotation omitted). Rather, to calculate the amount of a fee award, it is common in this jurisdiction to apply a "lodestar" approach.

"In implementing this lodestar approach, the judge first calculates the time counsel spent on the case, subtracts duplicative, unproductive, or excessive hours, and then applies prevailing rates in the community (taking into account the qualifications, experience, and specialized competence of the attorneys involved)." *Gay Officers Action League v. Puerto Rico*, 247 F.3d at 295, and cases cited. "Once established, the lodestar represents a presumptively reasonable fee, although it is subject to upward or downward adjustment in certain circumstances." *Lipsett v. Blanco*, 975 F.2d at 937.

 In making a fee request, counsel for the prevailing party must exercise "billing judgment," that is they "should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary[.]" *Hensley v. Eckerhart*, 461 U.S. 424, 434, 103 S.Ct. 1933, 1939–40, 76 L.Ed.2d 40 (1983). Moreover, it is "the court's prerogative (indeed, its duty) to winnow out excessive hours, time spent tilting at windmills, and the like." *Gay Officers Action League v. Puerto Rico*, 247 F.3d at 296.

 Since the "determination of the extent of a reasonable fee necessarily involves a series of judgment calls," the trial court has "extremely broad" discretion in setting a fee award. *Lipsett v. Blanco*, 975 F.2d at 937, and cases cited. While the court need not "set forth hour-by-hour analyses of fee requests," at a "bare minimum," the "trial court's fee determination must expose (its) thought process and show the method and manner underlying its decisional calculus," especially when "the fee award departs substantially from the contours shaped by the application."

plishment, and intolerable overclaiming" do not exist here. *Id.* Moreover, the defendant's cursory reference to this claim does not rise to the level of a justiciable argument. *See United States v. Bongiorno*, 106 F.3d 1027, 1034 (1st Cir.1997).

*Alfonso v. Aufiero,* 66 F.Supp.2d at 192 (internal citations and quotations omitted).

Following the preferred lodestar model, this court will first determine the appropriate hourly rate to be applied. Then the court will determine the number of compensable hours for work performed by Attorney Ward and Ms. Marable, taking into account Officer Roussel's objections. After multiplying this number by the reasonable hourly rate, the court will address whether a departure is appropriate in light of the extent of Parker's success.

### B. *The Reasonable Hourly Rate*

▮▮▮▮ Attorney Ward is seeking to be compensated at the rate of $250/hour. In support of his request, he has filed his own affidavit and the affidavit of Attorney Howard Friedman.[5] Officer Roussel contends that Attorney Ward's rate should not exceed $125—$150/hour, although he offers no support for why that figure is warranted. Officer Roussel does not contest the $30/hour rate being sought for Ms. Marable. This court finds that Attorney Ward's proposed rate is excessive. Rather, Attorney Ward will be compensated at the rate of $180/hour for core legal work and $120/hour for non-core work. The court accepts the rate of $30/hour for Ms. Marable.

▮▮▮▮ To "determine a reasonable hourly rate, the Court must find the prevailing hourly rate in Boston for attorneys of comparable skill, experience, and reputation" as Attorney Ward. *Martino v. Mass. Bay Transp. Auth.,* 230 F.Supp.2d 195, 205 (D.Mass.2002). Parker "bears the burden of providing this Court with affidavits and other forms of evidence that: (1) establish his lawyers' skills and experience, and (2) inform the Court of the prevailing market rate in the community for attorneys with such qualifications." *Id.* (citing *Blum v. Stenson,* 465 U.S. 886, 895–96 n. 11, 104 S.Ct. 1541, 1547 n. 11, 79 L.Ed.2d 891 (1984)) (additional citation omitted). It is well established that "the Court should not accept attorney submissions at face value but rather should assign more realistic rates to time spent." *Guckenberger v. Boston Univ.,* 8 F.Supp.2d 91, 103 (D.Mass.1998) (internal quotations omitted).

Attorney Ward has provided this court with remarkably little information about his background and experience. The full extent of the information provided is contained in his affidavit (Docket # 140) as follows:

2. I have engaged in the practice of law since 1978.

3. A large part of my practice has involved litigation and trials.

Based on statements made by Attorney Ward during the trial, and based on this court's observations, this court also finds that Attorney Ward is a graduate of Boston College Law School, he is a sole practitioner, he had never appeared in the Federal District Court in Massachusetts before this case, and it appeared that he had very little, if any, federal court experience in general. In addition, it appeared to this court based on his statements, continued reliance on general seminar materials, deference to non-lawyers on his staff in connection with legal arguments and this court's own observations, that Attor-

---

5. In his "Supplemental Objection to Plaintiff's Request for Payment of Fees" (Docket # 148) Officer Roussel contends that Attorney Friedman's affidavit should be stricken. That request is denied. While, as detailed *infra,* this court agrees that there are inadequacies in the affidavit and in the evidence submitted by Parker in general, there are facts contained in Attorney Friedman's affidavit which are not disputed and which are helpful to the court in setting the appropriate rate.

ney Ward had very little, if any, experience in litigating civil rights cases before the instant suit.

Parker provided this court with slightly more, but still inadequate information from which to establish the prevailing rate in the community for practitioners with Attorney Ward's experience. The extent of information provided by Attorney Ward in his affidavit is as follows:

> 5. I have spoken to the following people to obtain a consensus sense of a usual and accepted hourly rate for a practitioner of twenty five years experience litigating a Civil Rights case in Boston, Massachusetts: Professor Michael Avery of Suffolk University [L]aw School; Attorney Howard Friedman; Attorney James Simpson.[6]
>
> 6. My understanding is that for litigating a Civil Rights case an hourly rate of Two Hundred Fifty Dollars per hour is a reasonable and usual rate for an attorney of Twenty Five years experience.

(Docket # 140). The glaring inadequacies of this hearsay information, which does nothing to assist the court in setting a prevailing rate, much less a rate for someone of Attorney Ward's experience, do not warrant extended comment. In response to the court's request for additional information, Parker submitted the affidavit of Attorney Howard Friedman, who has been described by Chief Judge William Young as "one of the foremost practitioners in this field [of civil rights litigation] and, indeed, is sought out to teach the bar concerning these issues." *Zurakowski v. D'Oyley,* 46 F.Supp.2d 87, 89 n. 2 (D.Mass. 1999). This court notes, however, that even with such stellar credentials, and even though his "conduct, efficiency, and professionalism" during the trial before Judge Young was described by Judge Young as "exemplary throughout," Attorney Friedman only commanded an hourly rate of $240 for core work, which is $10/hour less than Attorney Ward is requesting in the instant case. *Id.* at 89.

In any event, unfortunately the information provided by Attorney Friedman in this case does not greatly assist the court in setting the prevailing rate for someone of Attorney Ward's experience. Thus, Attorney Friedman provided details about his own, extensive experience in the practice of civil rights litigation, but made no comment about Attorney Ward's experience. (*See* Friedman Affidavit (Docket # 147) at ¶¶ 1–4). He then asserted:

> 5. In my opinion, the fair market value of legal services is best measured by the rates charged for complex litigation by senior partners in large Boston law firms. According to a recent survey published in the *Massachusetts Lawyers Weekly's Annual Survey of The 100 Largest Law Firms in Massachusetts* on April 22, 2002, the hourly rates charged by partners in the Boston law firms that reported their rates ranged from $190 to $575.

Attorney Friedman then listed 16 local firms without any description of the firm, any indication of the type of legal work associated with these rates, any indication as to how Attorney Ward's practice fits in with these firms, or any explanation as to the wide range of fees charged within each firm itself. Attorney Friedman concluded his affidavit by citing three Massachusetts cases where rates approved were $325, $250 and $240/hour. (Friedman Affidavit at ¶ 6). However, in this court's view, the situations presented in those cases differed

---

**6.** This court notes that James Simpson represented the Somerset defendants in this litigation.

significantly from that presented to this court. *See, e.g., Guckenberger v. Boston Univ.*, 8 F.Supp.2d at 106 ($325/hour for core time awarded to Yale Law School graduate with 36 years of litigation experience, focusing primarily on disability law, with "sterling" credentials and whose "considerable abilities place him among the elite civil rights trial attorneys" in Boston); *Alfonso v. Aufiero,* 66 F.Supp.2d at 197 ($250/hour for core work justified for senior private civil rights attorney with nearly twenty years of private practice experience which centered on civil rights litigation, and police misconduct cases in particular); *Zurakowski v. D'Oyley,* 46 F.Supp.2d at 89 & n. 2 ($240/hour for core work awarded to Attorney Friedman as discussed above; court finds rate to be well above average and warranted only because counsel was "one of the foremost practitioners in the field").

In this court's view, Parker's case was not comparable to complex litigation handled by senior partners in large law firms. The legal issues were actually quite straightforward, and while a number of witnesses were involved, the facts, although hotly contested, were straightforward. Moreover, as a sole practitioner who does not specialize in civil rights litigation, this court finds it unlikely that Attorney Ward could command the fees charged by senior partners in large law firms. *See, e.g., Martino v. MBTA,* 230 F.Supp.2d at 205 (recognizing that sole practitioner's rates are lower than firm rates, because at a firm some work would likely be done by junior attorneys at lower rates).

■ The court is left with the need to ascertain a prevailing rate with very limited information. Despite Parker's failure to meet his burden of providing informa-

tion sufficient to enable this court to set a rate, however, this court finds that some award of fees is reasonable. Attorney Ward did try a case for eleven days [7] and was able to convince a jury to return a sizeable verdict in favor of his client in light of hotly contested facts. Therefore, compensation is warranted.

After consideration of the limited information provided, as well as other cases decided in this jurisdiction, this court sets Attorney Ward's rate at $180/hour for core work, and $120/hour for non-core work. For the reasons detailed above, this court finds that Attorney Ward's rates would be below those of senior partners in large firms who handle complex litigation. According to Attorney Friedman, therefore, the rate would be below $190/hour. Similarly, this case did not involve the complexities, and/or Attorney Ward does not have the experience comparable to those attorneys for which $200/hour (or more) has been found reasonable. *See, e.g., McLaughlin v. Boston School Comm.,* 976 F.Supp. 53, 62 (D.Mass.1997) ("first-rate" attorneys but without prior civil rights litigation experience awarded $200/hour in case involving "significant issues of law but virtually undisputed facts"); *Martino v. MBTA,* 230 F.Supp.2d at 205 (sole practitioner with a "long and impressive record as a litigator in the labor and employment field" awarded $200/hour). The rate of $180/hour for an attorney of Mr. Ward's experience is consistent with awards in other civil rights cases in this jurisdiction. *See, e.g., Martino v. MBTA,* 230 F.Supp.2d at 206 (partner at mid-sized labor and employment firm with just under 20 years experience awarded $175/hour; another attorney with more than 20 years experience awarded $185/hour—the rate proposed by the defendant); *Wilson v. McClure,* 135 F.Supp.2d 66, 74 (D.Mass.2001) (court

---

7. No proceedings were held on June 11, 2003.

awards $120/hour for core work for counsel for whom the only information provided was that he had been practicing law since 1983, that his practice is "primarily litigation," and that he lacked experience in civil rights matter); *Guckenberger v. Boston Univ.*, 8 F.Supp.2d at 106 (lawyer who was responsible "for the lion's share of brief writing and legal research and [who] played a vital management role in the presentation of the plaintiffs' case," who graduated Harvard Law School and practiced exclusively in the field of disability law since graduating 5 years earlier, awarded $180/hour for core work).

### The "Core" v. "Non–Core" Distinction

 It is common in the First Circuit to distinguish between "core" work and "non-core" work, and to compensate attorneys accordingly. "Under the First Circuit's taxonomy, core legal work 'includes legal research, writing of legal documents, court appearances, negotiations with opposing counsel, monitoring, and implementation of court orders' .... Non-core work, on the other hand, 'consists of less demanding tasks, including letter writing and telephone conversations.'" *Alfonso v. Aufiero*, 66 F.Supp.2d 183, 196 (D.Mass.1999) (quoting *Brewster v. Dukakis*, 3 F.3d 488, 492 n. 4 (1st Cir.1993)). It also includes conferences with co-counsel. *Id.* Non-core work is usually compensated at two-thirds the billing rate approved for core legal work. *See, e.g., id.* at 197, and cases cited. Thus, having determined that the prevailing rate for Attorney Wards's services is $180/hour, the court will apply a rate of $120/hour for non-core work. Since the rate agreed upon for Ms. Marable's work is relatively low, the court will not draw such a distinction for her tasks.

### C. *The Reasonable Hours Expended*

"In calculating the number of hours for which an attorney is entitled to compensation, a court first examines the number of hours actually expended, and then 'subtract(s) from that figure hours which were duplicative, unproductive, excessive, or otherwise unnecessary.'" *Martino v. MBTA*, 230 F.Supp.2d at 201 (quoting *Grendel's Den, Inc. v. Larkin*, 749 F.2d 945, 950 (1st Cir.1984)). Officer Roussel has submitted a detailed "Objection to Plaintiff's Request for Payment of Fees" ("Fees Opp.") (Docket # 143) wherein he raises several specific objections to hours charged. The court will address each of these grounds. In addition, where, as here "an attorney has failed to delineate within a particular entry what work is core work and what work is non-core work, this Court has distributed the recorded hours evenly among each task within a particular entry.... For example, if an attorney spent 12.0 hours on four tasks, three of which were core work and one of which was non-core work, and the attorney did not allocate [his] time among the tasks, this Court would designate 9.0 hours as core hours and 3.0 hours as non-core hours." *Wilson v. McClure*, 135 F.Supp.2d at 73 (internal citations omitted).

#### 1. *Vague Billing Entries*

 Officer Roussel is seeking to reduce the claim for fees by 207.5 hours on the grounds that many of the billing entries are impermissibly vague and not defined in sufficient detail to allow him to determine whether the tasks correspond to claims on which Parker is entitled to fees. (Fees Opp. at 20–25 & Exs. K–L). After review of these challenged entries, this request is denied.[8]

8. To the extent that any excessive charges due to uncertainties in the entries exist, they will

■ It is well settled that in the context of § 1988 fee petitions "the absence of detailed contemporaneous time records, except in extraordinary circumstances, will call for a substantial reduction in any award or, in egregious cases, disallowance." *Grendel's Den, Inc. v. Larkin*, 749 F.2d at 952. The problem with imprecise records is that "they fail to allow[ ] the paying party to dispute the accuracy of the records as well as the reasonableness of the time spent." *Lipsett v. Blanco*, 975 F.2d at 938 (internal citation and quotation omitted) (alteration in original).

■ After applying these standards to the challenged billing records in the instant case, the court concludes that the "records pass muster under the heightened *Grendel's Den* standard[.]" *Id.* The records here appear to have been kept contemporaneously. Further, most of the entries also give sufficient detail "regarding the nature of the factual or legal issues being discussed or reviewed." *Martinez v. Hodgson*, 265 F.Supp.2d 135, 140 (D.Mass. 2003). For example, the subject matter and nature of the tasks are either explicitly stated or readily ascertainable based on other information contained in the records. In addition, many of the entries, such as references to telephone calls with the plaintiff and his father, require no further details to be compensable. Finally, as detailed *infra*, the factual bases for all the claims are interrelated, and the development of those facts are compensable, so extensive detail is not necessary to assist the court. Consequently, there will be no general reduction made for the form of

Attorney Ward's entries.[9] Specific challenges will be discussed below.

### 2. *Unproductive Tasks*

■ A fundamental principle underlying judicial review of fee applications is that time spent on tasks not "necessary to the presentation of this case" should be deducted. *Alfonso v. Aufiero*, 66 F.Supp.2d at 193. Officer Roussel has challenged entries for several tasks as "unproductive or otherwise unnecessary to advance the litigation." *Id.* These items will be addressed in the order presented by Officer Roussel.

■ Officer Roussel challenges 4.5 hours Attorney Ward seeks for traveling to the federal court in Boston, apparently to file the Complaint in the instant case. (Fees Opp. Ex. A). Assuming, without deciding, that Parker's claim accrued on February 20, 1998 triggering the three year statute of limitations, *Poy v. Boutselis*, 352 F.3d at 483, there was no need for the pleading to be hand delivered to the court on January 12, 2001, over a month before the limitations period expired. Consequently, this time has been deducted.

Officer Roussel also challenges two entries for attending a status conference on April 30, 2001 as duplicative. (Fees Opp. Ex. O). Since there was only one status conference held on that date, this was obviously an error and the court has deducted 5.5 hours from Attorney Ward's claim.

■ Officer Roussel also challenges time spent in connection with preparing Parker's proposed Amended Complaint

be taken care of in connection with other reductions.

**9.** Some of Ms. Marable's entries are more troublesome as they even more general than Attorney Ward's, and leave the court to guess as to whether the work done should truly be

compensable. Given the very low rate charged and the overall reduction to the lodestar figures (as discussed *infra* ), however, no specific reductions will be made in Ms. Marable's billings either due to the generality of the work descriptions.

and on related tasks. (Fees Opp. Ex. B). Parker sought to amend the Complaint on the eve of trial by substituting a 74 page document with 361 numbered paragraphs, none of which, as conceded by Attorney Ward at the hearing on his motion to amend, added any substantive claims or additional defendants to the original 20 page, 60 paragraph, complaint. The proposed amendments were unnecessary and untimely, and the motion to amend was denied by the court. Thus, 7.5 hours in attorney time and 1.4 hours in paralegal time have been deducted.

■ Attorney Ward also seeks to recover time he spent interacting with the media, which Officer Roussel challenges. (Fees Opp. Ex. C). Since "[r]eported federal cases are unanimous in denying awards of attorneys' fees for media-related time to individual civil rights plaintiffs," the court has deducted this time. *McLaughlin v. Boston School Committee,* 976 F.Supp. 53, 72 (D.Mass.1997), and cases cited. Moreover, the fact that the majority of this time occurred after the verdict was returned further supports the conclusion that this was clearly not compensable time. *See id.* (citing *Hensley v. Eckerhart,* 461 U.S. at 433, 103 S.Ct. at 1939 (only hours "expended 'on the litigation'" may be compensated)). In addition to the time listed on Fees Opp. Ex. C, the court also has deducted a total of .8 hours of paralegal time spent on 6/3/03 and 2/19/03 communicating with the press, and an additional .2 of Attorney Ward's time on 5/30/03 for the same reasons.

■ Officer Roussel also challenges, and this court has deducted, 1.7 hours of attorney time and 16.7 hours in paralegal

time spent on researching and analyzing the issue of whether an independent expert should be appointed to assess the integrity of Swansea's and Somerset's 911 audio tapes for the night of the incident. (Fees Opp. Ex. D).[10] Parker proffered no evidence to the effect that the tapes had actually been tampered with, and elected not to pursue the investigation as it was not necessary to his case. Consequently, the defendant should not be charged for this time.

■ Officer Roussel also challenges the time expended in connection with Mr. Frank Saunders, a liability expert Parker identified, but ultimately dropped without explanation. (Fees Opp. Ex. E). This work was not necessary for the presentation of Parker's case, and 7.6 hours of attorney time and 9.3 hours of paralegal time will be deducted accordingly.[11]

■ Officer Roussel asserts that 11.5 hours billed for investigating the pursuit route and scene of the shooting on three occasions was unnecessary, and that 4 hours should have been sufficient. (Fees Opp. at 13–14 & Ex. F). This court disagrees. It was reasonable for Attorney Ward to familiarize himself with the scene. The investigations were reasonably spread out over time. Moreover, the videotape of the scene made by the State Police was not, as Officer Roussel claims, an adequate substitute for an in-person viewing because, *inter alia,* the quality of the tape, which was presented at trial, was questionable and at best presented a limited view of the configuration of the vehicles only after the shooting. Thus, the court will not deduct the challenged time.

---

10. In addition to the time listed on Fees Opp. Ex. D totaling 14.4 hours, this court has also excluded the following paralegal time: 6/5/03 (.1), 6/4/03 (.5), 5/31/03 (.1), 5/9/03 (.5), 5/5/03 (.5), 5/2/03 (.1) and 2/19/03 (.5).

11. In addition to the time listed on Fees Opp. Ex. E, the court has deducted .2 hours of Attorney Ward's time for 5/16/03.

### 3. Unsuccessful and Settled Claims

█ Officer Roussel argues that the court "should delete all hours spent by the plaintiff on failed claims against prevailing defendants, settled claims against settling defendants, and his state law claims (for which there is no statutory right to recover fees) from the lodestar amount." (Fees Opp. at 14). Thus, according to Officer Roussel, 18.6 hours were spent researching state causes of action (Fees Opp. Ex. G) and 26.9 hours were spent pursuing settled or prevailing co-defendants. (Fees Opp. at 15–16 & Ex. H). For the reasons detailed herein, this court has reduced Attorney Ward's hours by 16.8 hours as detailed below.

█ When a party challenges a fee award on the basis that some hours were spent on unsuccessful claims, the key issue is the relationship between the successful and unsuccessful claims. *See, e.g., Martinez v. Hodgson*, 265 F.Supp.2d at 141. As a general statement, "if unsuccessful claims are unconnected to, and easily severable from, the successful claims, hours spent on them will not be compensable . . . . If, however, substantially related to the successful claims, either because they share a common core of facts or are based upon related legal theories, hours spent on them will be recoverable." *Id. Accord Figueroa–Torres v. Toledo–Davila*, 232 F.3d 270, 277 (1st Cir.2000).

In the instant case, Officer Roussel has not challenged the factual development of the state law claims which are so interrelated with the federal claims that the work is compensable. He has, however, identified specific entries relating to the research of state law claims which are severable. This court concludes that these tasks are severable from compensable work and, consequently, 12.8 hours will be deducted.[12] *See Phetosomphone v. Allison Reed Group, Inc.*, 984 F.2d 4, 7 (1st Cir. 1993) (where hours attributable to state law claims are identifiable, they may be eliminated); *Alfonso v. Aufiero*, 66 F.Supp.2d at 194–95 (where time spent on malicious prosecution claim was discernible, it was appropriately eliminated as claim based on distinct facts and law).

█ Officer Roussel also challenges 26.9 hours he categorizes as being "readily identifiable as having been expended in pursuit of the plaintiff's claim against settling co-defendants Cote and Somerset." (Fees Opp. at 15 & Ex. H)[13] While this court agrees that correspondence specifically identified as being with settling co-defendants should be excluded,[14] contrary to Officer Roussel's contention, this court does not find that time spent in written discovery between Parker and the settling defendants should be deducted. Such discovery related to the development of common factual and legal scenarios which were necessary to the presentation of Parker's successful claims. Similarly, this court has not deducted the time spent in connection with common challenges undertaken by Somerset on behalf of all the defendants,

---

**12.** Although Officer Roussel has objected to 18.6 hours as found in Fees Opp. Ex. G, this court finds that the challenged entries of 4/11/98, 1/18/00, 2/8/00 are not limited to state law claims and will not be stricken. Therefore, this court only has reduced the hours claimed by 12.8 hours.

**13.** The total hours challenged in Ex. H is 27.7 hours, not 26.9.

**14.** *See Martinez v. Hodgson*, 265 F.Supp.2d at 140, where time spent solely in connection with settling party eliminated where settlement agreement included attorneys' fees. Here, although Officer Roussel challenged the time spent in connection with settling parties, Parker did not respond and did not argue that its settlement with the Somerset defendants did not cover attorneys' fees.

such as the motion to preclude the use of plaintiff's expert (Docket # 57) or the motion to sequester plaintiff's witnesses (Docket # 109), which the Somerset defendants filed. These challenges would have been made even in the absence of Somerset. Therefore, after reviewing the challenged entries, the court has eliminated 4 hours.[15]

### 4. *Travel Time*

██ Officer Roussel also challenges 36.3 hours that Attorney Ward seeks for traveling from his office in New London, Connecticut to Boston for depositions and court appearances on the grounds that he should not have to subsidize Parker's decision to use out of state counsel since there is no reason "that [Parker] could not have obtained representation on this claim from local counsel." (Fees Opp. at 17 & Exs. I, M). Officer Roussel has estimated that the round trip from Attorney Ward's office to events in Boston took 3.3 hours, a figure which Parker did not dispute. This court agrees that Parker has not offered any "articulable reason for imposing on a local opponent the extra expenses associated with retaining foreign counsel." *Ackerley Comm. of Mass., Inc. v. City of Somerville*, 901 F.2d 170, 171 n. 3 (1st Cir.1990). *See Guckenberger v. Boston Univ.*, 8 F.Supp.2d at 106 (travel time deducted where, *inter alia*, retention of California counsel was not essential but rather a "judgment call by the plaintiffs"). There is no question that there are many competent local attorneys who could have skillfully handled this case. Parker's decision to opt for a Connecticut attorney was done at his own expense.

Nevertheless, there certainly would be travel time associated with the 11 trips to Boston at issue even if Massachusetts counsel had been involved. Therefore, this court will assume travel time of 1 hour for each of the trips and will treat such time as non-core work. *See Alfonso v. Aufiero*, 66 F.Supp.2d at 196 (treating travel time as non-core work).

### 5. *Excessive Time*

██ Officer Roussel contends that the amount of time billed for certain tasks was excessive in relation to the nature of that task. When evaluating fee petitions, "the presiding judge must draw [ ] on [her] own experience and wisdom [in] deciding whether the time spent on each phase was in excess of a reasonable amount." *Alfonso v. Aufiero*, 66 F.Supp.2d at 192 (alteration in original) (internal citation and quotation omitted). Based on this court's analysis, reductions will be made as provided herein.

██ As an initial matter, Officer Roussel seeks to exclude a minimum of 44.8 hours which he characterizes as having been spent by Attorney Ward "educating himself on basic issues of Federal Civil Procedure, Federal Practice, straightforward or generally known issues of federal law and Massachusetts state tort law." (Fees Opp. at 18–20 & Ex. J). However, after reviewing the challenged time entries, this court finds that most of the time was spent researching specific issues related to this case, and was not simply generic work. Moreover, to the extent that the work took more time for Attorney Ward than for a litigator with extensive experience in civil rights litigation, this court has addressed this discrepancy by applying a lower hourly rate. Therefore, this challenged time will not be eliminated for this

---

**15.** The court has adopted Fees Opp. Ex. H except for the challenged entries dated 6/7/01, 7/19/01, 9/28/01, 9/20/01 (3 entries), 9/18/01, 9/17/01 (2 entries), 9/15/01, 2/25/02, 3/30/02, 3/18/02 (4 entries), 3/14/02 (3 entries), 3/8/02, 3/2/02, 9/19/02.

396

reason, however, specific objections will be discussed *infra.*

■ Officer Roussel also disputes the reasonableness of 28 hours Attorney Ward allegedly spent reviewing Massachusetts State Police reports. (Fees Opp. at 26).[16] However, the crux of the case was derived from the investigation conducted by the State Police, including the eye witness accounts gathered by the State Police. Therefore, no deductions for this work will be made.

■ Officer Roussel also challenges 15 hours of time Attorney Ward spent drafting jury instructions. (Fees Opp. Ex. N). Admittedly, the end product was not as complete as the court would have wanted, but this court does not find the time overly excessive as to second guess the amount of time claimed.

■ On the other hand, the court does agree that Attorney Ward's claim for 53.1 hours in connection with the motion for summary judgment is excessive. (Fees Opp. Ex. P). In addition to the cursory nature of the end product, Attorney Ward does not distinguish between time spent in connection with state law and other unsuccessful claims and compensable claims. Where, as here, it is impossible to separate out legal services for compensable and non-compensable claims, a general reduction is appropriate. *See Martinez v. Hodgson,* 265 F.Supp.2d at 141. Therefore, after a review of the pleadings, the court will reduce the hours in Exhibit P to a total of 30 core hours.

Officer Roussel also challenges the time spent "researching basic points of federal law and procedure" as excessive. (Fees Opp. at 28 & Ex. J). Except for specific objections discussed, *infra,* this court finds that reducing Attorney Ward's hourly rate will take care of any excessive charge and no further reductions will be made.

■ Next, without itemizing the challenged entries, Officer Roussel contends that the court should deduct 62.8 hours spent in connecting with "charting and re-outlining the facts of the matter." (Fees Opp. at 28).[17] After an exhaustive review of the records, the court has found only 37.5 hours falling into this category. While these entries all involve the "facts" of the case, for the most part the tasks focused on different aspects of the case. Therefore, this court finds that the time was not excessive, and will not deduct any hours on this basis.

■ Officer Roussel further objects to the fact that both Attorney Ward and Ms. Marable each billed more than 4 hours per day (generally 8 hours) for each trial day without specifying what, if any, tasks were performed after court time ended. (Fees Opp. Ex. Q). Officer Roussel further argues that the trial day was only 4 hours long.[18] As an initial matter, however, this court notes that on several days many hours were spent in court in connection with motions, which, in and of itself, made the court day longer than 4 hours. Moreover, because Attorney Ward "was working on the case largely by himself" and the

**16.** It is unclear which entries the defendant is disputing. Although Officer Roussel cites to Exhibit M of his materials, that exhibit contains no records corresponding to this category.

**17.** Officer Roussel failed to itemize these challenged entries. The court finds this work to have been done on the following dates: 2/6/98 (or 1999) (2.5), 2/7/98 (or 1999) (3.5), 9/10/98 (3), 10/6/98 (3.5), 10/8/98 (4), 10/10/98 (3), 2/12/99 (1.7), 5/22/99 (1), 6/26/99 (1.3), 1/18/00 (2.5), 11/18/00 (2), 9/5/01 (4) 12/1/01 (2.5) and 8/3/02 (3).

**18.** Trial was scheduled for 9:00 A.M.—1:00 P.M. daily.

trial was underway, long hours are to be expected. *Alfonso v. Aufiero*, 66 F.Supp.2d at 194. Nevertheless, in view of Attorney Ward's failure to provide any information as to the work done on the trial days beyond the trial time, the time will be allocated 6 hours core work and the balance non-core work on trial days.

 Officer Roussel also challenges 9.5 hours attributed to preparation of a motion *in limine* concerning "character issues."[19] Parker had filed a motion *in limine* seeking to exclude several categories of evidence, including "character evidence" of Parker, much of which he, himself, later introduced in connection with his damages claim; various statements of individuals who were not called to testify; and a very generalized challenge to defendants' experts. This court agrees that the time spent on this motion was excessive, and will eliminate 3.5 hours.

Officer Roussel also challenges several hours attributed to "voir dire" on the grounds the time was excessive. (Fees Opp. at 29). Again, Officer Roussel has failed to specify which entries he is challenging on this ground. After reviewing Parker's submissions, the court has identified 4 hours as having been spent exclusively on voire dire issues (4/19/03 & 4/29/03). Entries totalling 23 hours include some mention of work relating to the voire dire.[20] After reviewing all these entries, however, the court does not find the time charged excessive, and no deductions will be made for this objection.

 Finally, Officer Roussel challenges 20.9 paralegal hours for what he characterizes as clerical and secretarial functions. (Fees Opp. Ex. J). The court has reviewed the challenged entries and finds that, for the most part, the time charged was appropriate as it constituted work normally done by a paralegal. However, the court has eliminated 6.3 hours of paralegal time which, in this court's view, was either unnecessary (for example, as it related to the audio tape described above) or constituted routine mailings (as opposed to drafting letters) which should have been performed by a secretary and is non-chargeable. In addition, the court eliminated 1.1 hours of Attorney Ward's time for the same reason.[21]

### 6. *The Resulting Lodestar*

Performing the calculations by multiplying $180/hour × 485.7 core hours and $120/hour × 94.7 non-core hours results in a lodestar of $98,790 for Attorney Ward. Multiplying $30/hour × 465.3 hours results in a lodestar of $13,959 for Ms. Marable. The court will now evaluate Officer Roussel's contention that a downward adjustment is warranted in this case.

### D. *Adjusting the Lodestar*

 Officer Roussel argues that the court should reduce the lodestar to account for Parker's limited success in the overall lawsuit. This court agrees that some reduction is appropriate, but not the signifi-

---

**19.** Although not specifically identified by Officer Roussel, the court found these charges to have been made on 5/3/03 (3.5 hours), 5/4/03 (4 hours) and 5/9/03 (2 hours).

**20.** *See* entries for work performed on 2/4/03 (.5), 4/19/03 (2.0), 4/29/03 (2.0), 4/28/03 (6.5), 5/31/03 (5.5) and 6/1/03 (6.5).

**21.** The paralegal entries eliminated were charged on 5/16/03 (.2), 5/14/03 (.2), 5/6/03 (.4), 5/5/03 (.5), 4/22/03 (.2), 4/17/03 (.2), 4/15/03 (.3), 4/15/03 (.3), 4/10/03 (.2), 4/10/03 (.3), 2/28/03 (.2), 2/22/03 (.3), 1/17/03 (.2), 9/30/02 (.3), 9/23/02 (.5), 6/24/02 (.3), 5/2/02 (.4), 9/19/01 (.3), 9/19/01 (.5), 9/19/01 (.5). The attorney entries eliminated were charged on 2/16/01 (.3), 9/20/01 (.2) (4 entries).

cant reduction requested by the defendant.[22]

"Once established, the lodestar represents a presumptively reasonable fee, although it is subject to upward or downward adjustment in certain circumstances." *Lipsett v. Blanco*, 975 F.2d at 937. However, while "the trial court retains the authority to adjust the lodestar after initially computing it—... [it] must do so in accordance with accepted principles." *Coutin v. Young & Rubicam Puerto Rico, Inc.*, 124 F.3d 331, 337 (1st Cir. 1997). Thus, it is generally recognized that "[i]f a plaintiff prevails on only some of multiple claims, then a fee reduction may be in order." *Id.* at 339. To the extent that claims are not interrelated, *i.e.*, where they rest on different facts and legal theories, "they are by definition severable and unrelated" and time spent in connection with unsuccessful, severable claims should be eliminated. *Id.* As detailed above, the court has already deducted time for such severable, unsuccessful claims. The situation presented here is one where the plaintiff prevailed on only a limited subset of his interrelated § 1983 claims, and recovered a significant, but not overwhelming, verdict. Under such circumstances, "the trial court has discretion to shrink the fees to reflect that inferior result." *Id.* Where, as here, "multiple claims are interrelated and a plaintiff has achieved only limited success, awarding [him] the entire lodestar amount would ordinarily be excessive." *Alfonso v. Aufiero*, 66 F.Supp.2d at 198 (internal citations omitted). "The guiding principle, nonetheless, is that a court 'should award only that amount of fees that is reasonable in relation to the results obtained' at trial." *Id.* (internal citations omitted). "Results obtained" is determined by considering, in combination, the "plaintiff's success claim by claim," "the relief actually achieved" and "the societal importance of the right which has been vindicated." *Alfonso v. Aufiero*, 66 F.Supp.2d at 198 (quoting *Coutin v. Young & Rubicam Puerto Rico, Inc.*, 124 F.3d at 338). Applying these principles to the instant case warrants a reduction in the lodestar amount of 15%.

The "claim by claim" factor militates strongly in favor of reducing the fee. This inquiry "focuses on the number of substantive causes of action on which a plaintiff prevailed .... If a plaintiff prevails on only some of multiple claims, then a fee reduction may be in order." *Alfonso v. Aufiero*, 66 F.Supp.2d at 198 (internal citation and quotation omitted). Here, leaving aside the settled claims, Parker only prevailed against one of four defendants and on two of fourteen claims. Moreover, although as originally plead Parker's § 1983 claims against the individual officers alleged violations of approximately eight constitutional rights, he waived all but one of those grounds prior to trial. (Compl.¶ 47(a)-(h)).

Significantly, the municipal liability claims, on which Parker did not prevail, were of clear importance during the trial. Parker focused a great deal of effort on highlighting alleged deficiencies in the policies of the Police Department and continued to pursue his challenges to the constitutionality of police policies in his post trial

22. Without citing any legal authority, Officer Roussel asserts that the court should only allocate 1/6 of the fees prior to the settlement with the Somerset defendants and 1/4 of the expenses thereafter to him since he should not have to pay for failed claims against the other defendants. However, Officer Roussel has not provided any legal basis for reducing the fee in this manner. While the court agrees in principal that the fees should be reduced based on Parker's limited success, the court will not implement the method for which Officer Roussel advocates.

proceedings. The fact that Parker did not prevail against the majority of the defendants and on claims he clearly deemed an important part of his case, indicates that a reduction is appropriate. *See Alfonso v. Aufiero,* 66 F.Supp.2d at 200.[23]

The amount of the award was not insubstantial, especially in view of the evidence presented. The award to Parker was "more than enough to compensate him for any medical expenses resulting from the use of excessive force[.]" *Id.* There was virtually no evidence presented as to any lost wages, and the testimony the plaintiff elected to present as to the pain and suffering he endured was very limited. While the verdict fell short of what Parker was seeking, it was not insignificant. Therefore, considering the amount of damages awarded does not militate for or against a modification of the lodestar amount.

Finally, the verdict in this case is of some public significance in that a police officer who shot at a suspect without taking time to assess the situation was found liable. Presumably, this verdict will have a deterrent effect on other officers and, as such, "constitutes a measure of success" for the plaintiff. *Id.* On the other hand, the validity of the policies and practices of the Towns was affirmed, and the other individual officers were found to have acted reasonably, despite having fired upon Parker. Consequently, this case cannot be considered to be one involving great public significance beyond the borders of those involved.

"A reduced fee award is appropriate if the relief, however significant, is limited in comparison to the scope of the litigation as a whole." *Id.* (quoting *Hensley v. Eckerhart,* 461 U.S. at 440, 103 S.Ct. at 1933). This court finds that a reduction of 15% is

appropriate here in light of plaintiff's loss against the municipalities on theories central to the case, and in light of his loss against all defendants other than Officer Roussel. *Alfonso v. Aufiero,* 66 F.Supp.2d at 200. "Any greater reduction would undermine the modest success achieved." *Id.* at 200–201. Thus, reducing the total of Attorney Ward's and Ms. Marable's lodestar amounts ($112,749) by 15% ($16,912.35) results in $95,836.65 in compensable legal fees.

### E. *Costs*

Parker has also submitted a bill of costs (attached to Docket # 139) wherein he is seeking $15,695.30 for charges related to this litigation. Officer Roussel has objected to many of the charges on the grounds that they are non-taxable or that they were not necessary for the presentation of the case. After reviewing the costs and objections, this court will award Parker $11,758.40 in costs.

"[C]osts other than attorneys' fees shall be allowed as of course to the prevailing party unless the court otherwise directs[.]" Fed.R.Civ.P. 54(d). When costs are sought based on the combination of Rule 54(d) and 42 U.S.C. § 1988, the costs taxable are those enumerated in 28 U.S.C. § 1920 and the "reasonable out-of-pocket expenses incurred by the attorney and normally charged to the client[.]" *Poy v. Boutselis,* 352 F.3d at 490 (internal citation and quotation omitted).

Section 1920 allows taxation of:

(1) Fees of the clerk and marshal;

(2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case;

---

**23.** Since the work done on these constitutional claims were not separated from the constitutional claims on which Parker prevailed, the time has not been previously reduced for these unsuccessful constitutional claims.

(3) Fees and disbursements for printing and witnesses;

(4) Fees for exemplification and copies of papers necessarily obtained for use in the case;

(5) Docket fees under section 1923 of this title;

(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services . . . .

■ Officer Roussel first objects to the travel expenses for counsel, counsel's staff and Parker because they are not recoverable under 28 U.S.C. § 1920. (Objection to Plaintiff's Bill of Costs ("Costs Opp.") Ex. A). However, in assessing costs in civil rights cases, the court is not restricted to the costs enumerated in 28 U.S.C. § 1920. *See Poy v. Boutselis,* 352 F.3d at 490 (*citing System Management, Inc. v. Loiselle,* 154 F.Supp.2d 195, 204 (D.Mass. 2001)). Therefore, further analysis is required.

■ The gas, parking, tolls and telephone expenses are common, out-of-pocket expenses which are normally billed separately to the client and are, therefore, recoverable. *See Alfonso v. Aufiero,* 66 F.Supp.2d at 201–02 (parking, mileage, and telephone charges, among other costs, are not part of overhead and are allowable under 42 U.S.C. § 1988). Moreover, the amounts charged are not significantly greater than would have been charged by local counsel, so no reduction is needed. A more difficult question is raised in connection with the hotel costs being sought. There is no question that where an overnight stay is reasonably necessary to the presentation of the case, hotel costs may be recoverable, even though they are not provided for under § 1920. *See Grendel's Den, Inc. v. Larkin,* 749 F.2d at 957 (one night hotel stay for counsel arguing case at United States Supreme Court allowed). Here, however, as noted above, the plaintiff has provided no information as to why out-of-state counsel was necessary. If Massachusetts counsel had been used, it would have been unlikely that the hotel costs would have been incurred, except for the plaintiff himself. Parker has not responded to Officer Roussel's objections to these costs, so the court has no explanation as to the need for the hotel charges. Therefore, this court has deducted the $908.28 charges for both Attorney Ward and Ms. Marable, and the $40 charged for a deposit at Comfort Inn & Suites.

■ Officer Roussel next challenges the $900 spent on an "audio tape analysis" (Costs Opp. Ex. B), presumably conducted by an expert. Not only was this information not used in presenting Parker's case, the analysis relates to a theory which Parker decided not to pursue.[24] Consequently, the $900 has been disallowed.

■ Officer Roussel further challenges the charges for research on the grounds that the subject of the research is not identified. (Costs Opp. Ex C). Unlike the time sheet entries, Parker has made no effort to identify the subject matter of any of the "research" charges. Since most of Parker's claims were unsuccessful, a reduction of 50% in the research charges for 7/15/03, 7/9/03 and 5/29/03 is appropriate given the lack of description.

---

**24.** Since the costs at issue were not necessary to the presentation of Parker's case and, therefore, not taxable on that basis, this court does not need to address the split within this District as to whether expert fees are recoverable in suits brought under 42 U.S.C. § 1983.

*Compare, e.g., McLaughlin v. Boston School Committee,* 976 F.Supp. at 69 (expert fees not taxable in § 1983 cases) *with Guckenberger v. Boston Univ.,* 8 F.Supp.2d at 111–12 (expert fees are recoverable).

■ Officer Roussel also challenges what he characterizes as "routine office overhead," textbooks and electronics. (Costs Opp. Ex. D). However, after a careful review of the challenged entries, this court finds that, with the exception of one textbook, and a timer, the charges "are within reasonable limits and bear a rational relation to the extent of this litigation." *Alfonso v. Aufiero,* 66 F.Supp.2d at 201. "[I]dentifiable, out-of-pocket costs such as these, which are normally billed separately to the client, 'are not properly treated as overhead expenses for purposes of a fee award.'" *Id.* (quoting *LeBlanc–Sternberg v. Fletcher,* 143 F.3d 748, 763 (2d Cir.1998)).

The use of overnight delivery, to which Officer Roussel objects, has become routine regardless of need for expediency. In some future case, that issue may have to be decided, but given the limited amount requested this court will not make any deductions for overnight mailing, except for the FedEx mailings to J. Chapdelaine who, as detailed above, was involved in analyzing the audio tape, a process for which there will be no recovery since it was not necessary to the presentation of Parker's case.

■ This court will, however, disallow the $12.15 charge for a "Radio Shack Timer, audio cassette tape" as such items were not, to this court's knowledge, used in the presentation of Parker's case.

■ This court also will disallow $40.95 spent on a textbook on Massachusetts Criminal Law & Procedure, as this appears to be a standard, general text which could be either obtained from the library or which should have been in counsel's library already. This court will not, however, disallow the book Street Survival–Police Tactics, as it appears to be directly related to this case.

■ Finally, Officer Roussel challenges costs of expedited transcripts. It appears from the bill of costs that any "expedited" transcript related to trial testimony (*see, e.g.,* testimony of Richard Roussel—expedited on 6/13/03) and was reasonable given the critical nature of the testimony. Therefore, there will be no deduction for transcript charges.

### III. *CONCLUSION*

■ For the reasons detailed herein, Parker's "Motion for Plaintiff's Attorney's Fees and Costs" (Docket # 139) is ALLOWED IN PART and DENIED IN PART. Officer Roussel shall pay Parker $95,836.65 for legal fees and $11,758.40 for costs, for a total of $107,595.05. Judgment shall enter accordingly. In accordance with 28 U.S.C. § 1961, post judgment interest shall accrue on this award from June 17, 2003, the date this court entered the judgment nunc pro tunc which "unconditionally entitle[d] the prevailing party to reasonable attorney fees." *Assoc. Gen. Contractors of Oh., Inc. v. Drabik,* 250 F.3d 482, 486, 494–95 (6th Cir.2001) (adopting majority view that post judgement interest accrues on attorney's fee award on date prevailing party becomes entitled to such award rather than when the sum is actually quantified), and cases cited. *See also Foley v. City of Lowell, Mass.,* 948 F.2d 10, 22 n. 16 (1st Cir.1991) (court leaves open question "whether post-judgment interest begins to accrue from the date a judgment expressly and unconditionally establishing a party's right to attorneys' fees is entered or from the date of a judgment that establishes the quantum of such fees" since the original judgment did not mention attorneys' fees).