**Anthony WILLIAMS, Plaintiff,**

v.

**TOWN OF RANDOLPH, Chief Robert Churchill, Lt. Paul Porter, Lt. Arthur Sullivan, Lt. Richard Crowley, Sgt. William McNamara, Officer Robert Audette, and Officer Michael Tuitt, Defendants.**

**Civil Action No. 06–11081–WGY.**

United States District Court,
D. Massachusetts.

Sept. 2, 2008.

---

Richard J. Hayes, Boston, MA, for Plaintiff.

Douglas I. Louison, Regina M. Ryan, Louison, Costello, Condon & Pfaff, LLP, Boston, MA, for Defendant.

## MEMORANDUM AND ORDER

WILLIAM G. YOUNG, District Judge.

## I. INTRODUCTION

In 2006, the plaintiff, Anthony Williams ("Williams"), filed an eight-count complaint against the town of Randolph and seven of its police officers. Williams alleged a violation of his civil rights and various common law causes of action. In January 2008, this Court granted summary judgment entirely as to the town of Randolph and four of the police officers. As to the remaining three officers, the Court permitted only three of the eight stated causes of action to go forward.[1]

After a four-day trial, a jury returned a verdict against the three remaining defendants, finding that they seized Williams without probable cause and used excessive

---

1. These were use of excessive force, false imprisonment, and assault and battery.

force in effectuating the seizure. Jury Verdict [Doc. 46] at 1–2. The jury, however, awarded only nominal damages of one dollar. *Id.* at 2. Williams now moves for an award of attorneys' fees in the amount of $86,454 and for costs in the amount of $87.50 pursuant to 42 U.S.C. § 1988(b).

## II. DISCUSSION

Civil rights plaintiffs who receive only awards of nominal damages are indeed prevailing parties for the purposes of section 1988. *Farrar v. Hobby,* 506 U.S. 103, 113, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992). Nonetheless, the Supreme Court has explicitly held that where such plaintiffs make a claim for but fail to recover compensatory damages, it is evident that the plaintiff "fail[ed] to prove an essential element of his claim for monetary relief" and thus that "the only reasonable fee is usually no fee at all." *Id.* at 115, 113 S.Ct. 566. This ruling is based on the bedrock principle that the "most critical factor" in determining the reasonableness of a fee award "is the degree of success obtained." *See id.* at 114, 113 S.Ct. 566 (quoting *Hensley v. Eckerhart,* 461 U.S. 424, 436, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)). It is significant that, although the circumstances of *Farrar* were extreme in that the plaintiff sought $17 million but recovered only nominal damages, *id.* at 106–07, 113 S.Ct. 566, the Supreme Court did not qualify its holding. Instead, it articulated a *general* rule that "a plaintiff who seeks compensatory damages but receives no more than nominal damages is often" a plaintiff who "should receive no attorney's fees at all." *Id.* at 115, 113 S.Ct. 566.

In the case at bar, Williams sought both compensatory damages "in an amount ... not less than $100,000" as well as punitive damages. Compl. [Doc. 1] at 22. The jury, however, awarded a total of one dollar. In light of these circumstances, the Court finds *Farrar* instructive. This is especially true because the jury's refusal to award compensatory damages is not the only evidence of Williams's limited success. Specifically, Williams filed an eight-count complaint in which he asserted a plethora of constitutional and common law claims against eight different defendants. The Court, however, granted summary judgment as to five of the eight defendants with regard to all eight counts; with regard to the remaining three defendants, against whom Williams eventually proceeded to trial, the Court granted summary judgment on all claims save for three. Williams ultimately prevailed against these defendants on only two theories of relief—seizure without probable cause and excessive force—that constituted only a small fraction of the claims he initially asserted.

Even absent *Farrar,* this Court would not be inclined to award attorney's fees in this instance, both due to the limited degree of success that Williams enjoyed, *see Hensley,* 461 U.S. at 436, 103 S.Ct. 1933, and the fact that Williams's petition for fees is inadequate in a number of respects, *see id.* at 437, 103 S.Ct. 1933 ("[T]he fee applicant bears the burden of establishing entitlement to an award and documenting the hours expended and hourly rates."). As an initial matter, Williams utterly fails to satisfy his burden "to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum v. Stenson,* 465 U.S. 886, 895 n. 11, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984); *see also Bordanaro v. McLeod,* 871 F.2d 1151, 1168 (1st Cir.1989) (noting that the First Circuit has "consistently followed [*Blum*'s ] teaching"). Instead, Williams has submitted only a five-paragraph affidavit from his attorney, Richard J. Hayes ("Hayes"), which simply states Hayes's billing rate in 2003 when he took Williams's case and that since that

time Hayes has "increased [his rate] by $25 per hour per year." Neither Hayes nor Williams presents this Court with any information that would permit it to conclude that Hayes's rates are reasonable in comparison to those charged by other lawyers in the area.[2]

 In addition, Hayes's billing records are deficient. Contemporaneous, detailed billing records are required to accompany any request for attorney's fees in this Circuit. *Grendel's Den v. Larkin,* 749 F.2d 945, 952 (1984). To be in full compliance, attorney billing entries must give the court an indication of the factual or legal subject matter of the work. *See Martinez v. Hodgson,* 265 F.Supp.2d 135, 141 (2003). Without such information, neither defendants nor the Court can effectively evaluate "the accuracy of the records [or] the reasonableness of the time spent." *Lipsett v. Blanco,* 975 F.2d 934, 938 (1st Cir.1992). When an attorney fails to comply with this requirement, substantial reductions or even disallowance of attorney's fees are appropriate remedies. *Grendel's Den,* 749 F.2d at 952; *see also Hensley,* 461 U.S. at 440, 103 S.Ct. 1933 ("Where the documentation of hours is inadequate, the district court may reduce the award accordingly."); *Martinez,* 265 F.Supp.2d at 141 (noting that courts in the First Circuit "commonly" reduce fee awards by fifty percent for violations of this rule).

 Here, it is not clear that Hayes's billing records were kept contemporaneously. *See infra* note 4. Furthermore, Hayes has unquestionably failed to comply with the detailed billing requirement. His entries contain only general notations, such as "research," "case law review," and "client conference," *see* Billing Record [Doc. 50 Ex. 1], that make it exceptionally difficult for this Court to engage in meaningful review of his billing. This is especially problematic in this case for two reasons.

First, "where a plaintiff has failed to prevail on a claim that is distinct ... from his successful claims, the hours spent on the unsuccessful claim should be excluded." *Hensley,* 461 U.S. at 440, 103 S.Ct. 1933. Here, at the very least, hours spent on Williams's defamation claim, which was based on conduct subsequent to and separate from the conduct that formed the basis for the claims on which the jury found in his favor, should be excluded from any calculation of a fee award.[3] Due to the general nature of the billing notations, however, this Court cannot identify this time. Hayes and Williams thus fail to heed the Supreme Court's direction that applicants for attorney's fees "should maintain billing time records in a manner that will enable a reviewing court to identify distinct claims." *Id.* at 436, 103 S.Ct. 1933.

Second, it appears Hayes has inflated his billing. The most egregious—and easily verifiable—example occurs with regard to the days this case was on trial. Hayes billed ten hours for "TRIAL" on May 12, May 13,[4] and May 14,[5] 2008. Billing Rec-

---

**2.** This is particularly significant because "the quality of representation ... generally is reflected in the reasonable hourly rate." *Blum,* 465 U.S. at 899, 104 S.Ct. 1541. Here, however, the Court was unimpressed with the level of advocacy demonstrated by plaintiff's counsel. For instance, the Court is not aware of one deposition that Hayes conducted in this case.

**3.** The Court granted summary judgment as to all defendants on the defamation count.

**4.** Hayes's billing records reflect two identical entries for May 12. Billing record at 5. The remainder of his entries, however, are one day off. For example, Hayes's final entry of "TRIAL AND VERDICT" is attributed to May 15, 2008. *Id.* at 6. The verdict in this case, however, actually entered on May 16. Similarly, Hayes asserts there was a "TRIAL HIATUS" on May 14, when in fact this occurred on May 15.

ord at 5–6. Similarly, on May 16 [6] Hayes billed eight hours for trial activities. *Id.* at 6. This Court, however, presides over trials for only *four* hours each day.[7] In another example, Hayes bills two hours on January 25, 2008 for "[r]eview of court[']s order on [summary judgment] motion." *Id.* at 4. This Court, however, issued its ruling on summary judgment from the bench; thus, there was no written order for Hayes to review. No less problematic are the smaller instances of inflated billing. For instance, this Court finds it difficult to believe that Hayes devoted half an hour of his time to "receiving" the defendant's motion for summary judgment, especially when the next billing entry indicates that he did not begin "reviewing" the motion until the next day. *Id.* at 4. These entries evidence, at the very least, that Hayes— and consequently Williams—did not make a "good faith effort to exclude from the fee request hours that are excessive, redundant, or otherwise unnecessary." *Hensley,* 461 U.S. at 434, 103 S.Ct. 1933. Accordingly, the Court finds that the billing records as a whole lack credibility, but without the detail called for by *Grendel's Den* it cannot determine how many hours should reasonably be credited to Hayes.

## III. CONCLUSION

For the foregoing reasons, Williams's motion for attorney's fees and costs [Docket No. 50] is DENIED.

SO ORDERED.

---

The Court thus concludes that the second entry for May 12 is in actuality an entry for May 13, rather than being a duplicative entry. Of course, the fact that Hayes's billing records incorrectly reflect the dates of key events in this case raises questions about whether these records were, as required, kept contemporaneously or were generated after the fact.

**5.** The Court presumes the billing entry for May 13 is actually for May 14. *See supra* note 3.

**6.** The Court presumes the billing entry for May 15 is actually for May 16. *See supra* note 3.

**7.** This case was given to the jury for deliberations on May 16, 2008. The Court concedes it is conceivable that Hayes could have billed more than four hours on that day if he eschewed other work while waiting in the courthouse for a verdict. The Court, however, doubts this occurred. At one point, for example, the jury asked a question. Despite the Court's efforts to locate Hayes prior to answering it, Hayes could not be found. Accordingly, the Court is not inclined to credit Hayes for "on-call" hours between the time the jury retired to deliberate and the time a verdict was returned.